UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:25-cv-628

| | |
|---|---|
| DEANDREA SALVADOR<br><br>*Plaintiff,*<br><br>v.<br><br>OMNICOM GROUP, INC., WHIRLPOOL CORPORATION, DDB WORLDWIDE COMMUNICATIONS GROUP LLC, DM9DDB, WHIRLPOOL DO BRASIL LTDA. (CONSUL), 1-10 (name being fictitious for individuals whose identities are currently unknown); and ABC ENTITIES 1-10 (names being fictitious for corporate or other legal entities whose identities currently remain unknown)<br><br>*Defendants*. | **COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

Plaintiff, DeAndrea Salvador ("Plaintiff"), by way of complaint against Defendants OMNICOM GROUP, INC., WHIRLPOOL CORPORATION, DDB WORLDWIDE COMMUNICATIONS GROUP LLC, DM9DDB, WHIRLPOOL DO BRASIL LTDA. (collectively "Defendants"), by and through its counsel, hereby alleges and avers as follows:

## THE PARTIES

1. Plaintiff is a resident of North Carolina, United States.

2. Plaintiff is an elected official in the North Carolina Senate and a nationally prominent leader and subject matter expert in energy affordability and AI policy.

3. Plaintiff previously served on the advisory committee of the National Energy and Utility Affordability Coalition and currently serves on the Executive Committee of the National Council on Electricity Policy.

4. Defendant Omnicom Group Inc. ("Omnicom") is a corporate entity formed under the laws of the United States with its principal place of business at 280 Park Avenue, New York, NY 10017. Omnicom is the ultimate parent of DDB Worldwide Communications Group LLC and the DM9DDB brand, and exercises control over its subsidiaries in the advertising campaigns at issue.

5. Omnicom is a global marketing and corporate communications holding company with subsidiaries that provide advertising, strategic media planning, digital and interactive marketing, direct and promotional marketing, public relations, and other communications services to clients worldwide.

6. Defendant Whirlpool Corporation ("Whirlpool") is a corporate entity formed under the laws of the United States with its principal place of business at 200 M-63 Benton Harbor, MI 49022 and a multinational manufacturer and marketer of a portfolio of well-known appliance brands.

7. Whirlpool is the parent company of Defendant Whirlpool do Brasil Ltda. ("Consul"), which markets products in Brazil and the United States under the "Consul" brand.

8. Defendant DDB Worldwide Communications Group LLC ("DDB") is a limited liability company organized under the laws of the State of New York, with its principal place of business at 200 Varick St, 11th Floor, New York, New York 10014. DDB is a wholly owned subsidiary of Omnicom.

9. DDB operates as one of Omnicom's principal advertising agency networks, maintaining a global footprint with subsidiary and affiliate agencies across numerous international markets.

10. Upon information and belief, Defendant DM9DDB ("DM9") is a wholly owned or majority owned entity of DDB, and is a Brazilian advertising agency that is part of Omnicom Group's DDB network, based in São Paulo.

11. At all relevant times, DM9 functioned as a regional affiliate or subsidiary under the DDB Worldwide network, and by extension, was under the operational umbrella and under the control of Omnicom Group.

12. At all relevant times, DM9, acting through its affiliation with DDB and Omnicom, served as an advertising agency for Whirlpool and Whirlpool's Brazilian brand, Consul. The business relationship involved the creation, development, and dissemination of marketing campaigns, both domestically in Brazil and for international audiences via digital platforms.

13. Through these corporate relationships, Omnicom and DDB exercised control and oversight over DM9's advertising services.

14. Whirlpool exercised authority over the creative direction and approval of campaigns concerning Whirlpool's Consul brand.

15. Advertising campaigns and the "Campaign," as defined below, and materials created by DM9 for Consul were done within the scope of DM9's role as an agent or affiliate of DDB and Omnicom, and at the direction and for the benefit of Whirlpool and its subsidiary Consul.

16. Upon information and belief, the "Campaign," as defined below, was created with the active contribution, assistance and approval of Whirlpool, Omnicom and DDB.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §1121(a) as the claims involve federal questions, including false advertising under the Lanham Act.

18. This Court has supplemental jurisdiction over Plaintiff's related claims arising under the laws of the State of North Carolina pursuant to 28 U.S.C. §1367(a), as these claims are so related to the federal claims that they form part of the same case or controversy.

19. This Court has personal jurisdiction over Defendants pursuant to N.C. Gen. Stat. § 1-75.4, as the unauthorized use of Plaintiff's name, image, likeness and persona caused injury within North Carolina, arising out of an act or omission outside the state.

20. This Court has personal jurisdiction over Defendants because its products and services are used and consumed within North Carolina in the ordinary course of trade.

21. Venue is proper in this Court pursuant to N.C. Gen. Stat. 1-82, as the plaintiff resides in North Carolina, and the injury occurred in North Carolina.

## STATEMENT OF FACTS

**The Cannes Lions Festival**

22. The Cannes Lions International Festival of Creativity ("Cannes Lions"), held annually in Cannes, France, is one of the most prestigious global events in the advertising and creative communications industry, often referred to as the "Oscars of Advertising."

23. Cannes Lions attracts participation from major international brands, advertising agencies, media platforms, and creative professionals representing over 90 countries, including the United States.

24. Far from being a regional event, Cannes Lions is explicitly designed to be an international showcase, with content and campaigns curated and displayed for a global audience, including advertisers, consumers, and media outlets in the United States.

25. Award-winning advertisements and featured creative work from the festival are widely disseminated across digital platforms, including YouTube, LinkedIn, Instagram, Twitter, and industry publications such as Adweek, Campaign, and The Wall Street Journal and notably and intentionally into the United States and North Carolina.

26. These materials are frequently republished, shared, and viewed by U.S.-based users, brands, and journalists, including industry decision-makers and consumers.

27. Winning or featuring at Cannes Lions provides companies and creators with significant international exposure, industry credibility, and long-term commercial value.

28. By presenting an advertisement at Cannes Lions, a company affirmatively places its content into international circulation, with the foreseeable consequence that the material will reach U.S. audiences, particularly given the U.S.'s central role in the advertising, media, and tech sectors.

29. Many campaigns launched or honored at Cannes Lions go on to be broadcast or rebroadcast in U.S. markets, used in pitch materials, or circulated as promotional "case studies" on digital platforms that are readily and regularly accessible in the United States.

30. Accordingly, it is well known that any unauthorized use of a person's name, image, likeness and persona, particularly in a high-profile campaign exhibited at Cannes Lions, is

likely to cause reputational and commercial harm in the United States, and especially in North Carolina, where Plaintiff resides, is professionally and politically active, and is well-known.

**The TED Talk**

31. In 2018, Plaintiff gave a TED Talk (the "TED Talk") on how to make energy more affordable for low-income families in the U.S.

32. Plaintiff's TED Talk was grounded in personal experience, research and focused on expanding access to essential solutions for low-income and rural communities in the United States.

33. Plaintiff is the sole author and owner of the copyright in the TED Talk titled "How we can make energy more affordable for low-income families" (the "Work").

34. Plaintiff has applied to register the Work with the U.S. Copyright Office.

**The Campaign**

35. DM9 created the "Efficient Way to Pay" Campaign (the "Campaign") for Consul Appliances, a Whirlpool brand.

36. The Campaign promoted energy-efficient appliances, such as refrigerators and washing machines, and specifically Consul products.

37. DM9 created the Campaign pursuant to the direction and approval of Consul/Whirlpool, who commissioned the Campaign as part of their brand marketing strategy.

38. Upon information and belief, Whirlpool, DDB or Omnicom supplied DM9 with Plaintiff's TED Talk.

39. Whirlpool oversaw and endorsed the messaging and positioning of the Campaign through its Consul brand team "to allow consumers to finance new appliance purchases with utility cost savings from improved appliance efficiency."

40. The Campaign aimed to convince consumers on how upgrading to Consul's energy-efficient appliances could lead to long-term savings on electricity bills, by featuring a case study supporting their position.

41. This Campaign was created through artificial manipulation of CNN Brazil broadcasts and Plaintiff's TED talk.

42. The Campaign was circulated amongst the Defendants.

43. The Campaign was approved by Whirlpool, DDB and Omnicom.

44. Notwithstanding the completely false and manipulated content, Defendants made the decision to submit the Campaign to the Cannes Lions International Festival of Creativity, showcasing its creative execution, public reach, and brand effectiveness.

45. The Cannes submission lists Consul (Whirlpool) as the client/advertiser and DM9 as the agency of record.

46. The Campaign was submitted to Cannes knowing the submission redounded to the benefit of the submitter, the submitter's client, the brand featured, and the family of companies affiliated, directly and indirectly, with the submitter.

47. The Campaign was commercialized when it was circulated and by submission to Cannes knowing that it would be circulated internationally, including the United States and North Carolina, and was one of several commercialization steps.

48. The Campaign included portions of the TED Talk delivered by Plaintiff.

49. The Campaign included manipulated portions of the TED Talk delivered by Plaintiff.

50. Defendants' Campaign used Plaintiff's TED Talk, placed her name, image, likeness, and persona in a commercial context Plaintiff did not authorize, and fabricated statements and visuals to appear as though Plaintiff made them.

51. As intended by the Defendants, the Campaign was widely distributed both domestically and internationally, including on platforms such as YouTube and Vimeo.

52. On June 19, 2025, DM9 was awarded the Grand Prix in the Creative Data category for the Campaign.

53. On June 20, 2025, DDB released a press statement highlighting the Grand Prix win and claimed measurable growth attributable to the award.

54. On June 21, 2025, members of the Consul team were publicly photographed holding the Cannes Lions trophy alongside executives from both DM9 and DDB.

55. From June 21 through June 30, 2025, the Campaign was featured in, *inter alia,* Ads of the World, Contagious, Campaign Brief Asia, and Valor Econômico, further emphasizing its global reach.

56. On June 20, 2025, a journalist emailed Plaintiff's North Carolina Senate email requesting comment on her part of the Campaign.

57. To date, the altered video remains accessible online and has been viewed across the globe.

58. As a result, not only was Plaintiff's message distorted, but the public's understanding of Plaintiff's knowledge, statements and policies were wrongfully manipulated.

59. Defendants' wrongful acts misappropriated and inaccurately associated Plaintiff's TED Talk with her endorsement of Defendants' goods and services.

60. Defendants' wrongful acts and unauthorized use of Plaintiff's name, image, likeness and persona caused her reputational harm and severe emotional distress.

61. Defendants' wrongful acts and unauthorized use of Plaintiff's name, image, likeness and persona have subjected her to ridicule and embarrassment.

62. Defendants' wrongful acts and unauthorized use of Plaintiff's name, image, likeness and persona have caused her to expend considerable time and expense to defend and repair her reputation.

63. Upon discovering the manipulation of her name, image, likeness and persona, Plaintiff was shocked and upset at how the alteration misrepresented both Plaintiff's message and values.

64. Plaintiff's original TED Talk was grounded in personal experience and research, and was focused on expanding access to essential solutions for low-income and rural communities in the United States.

65. The manipulated version of Plaintiff's TED Talk changed her voice and visuals without her permission, and placed Plaintiff's name, image, likeness, and persona in a context Plaintiff did not authorize.

66. The result is a distortion of not just Plaintiff's message, but of the public's understanding of what Plaintiff stands for.

67. This is particularly troubling given Plaintiff's role as a public official, Plaintiff's involvement in shaping responsible technology policy, and Plaintiff's commitment to maintaining clear ethical boundaries.

68. When Plaintiff first discovered the unauthorized use and manipulation of her image, she felt shocked, violated, and deeply unsettled. Plaintiff, knowing that her name, image, likeness and persona had been altered using AI, or some other means, and publicly and widely distributed without Plaintiff's consent, has suffered significant emotional distress.

69. Plaintiff experienced additional anxiety regarding how the Campaign might affect the public perception of her, particularly in light of Plaintiff's elected role.

70. Plaintiff's concern is heightened by the possibility that some of the Campaign's claims may be factually unsupported or misleading, further compounding the reputational risks of being falsely associated with them.

**CLAIMS FOR RELIEF**
**Count I – Right of Publicity / Misappropriation of Likeness**
**(Against all Defendants)**

71. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 70 as if fully set forth herein.

72. North Carolina recognizes as actionable an invasion of privacy and the common-law misappropriation of name and likeness with "name" and "likeness" including a person's reputation, prestige, social or commercial standing, or other values publicly associated with him, a person's image, whether republished or rebroadcast by photograph, drawing or caricature.

73. Defendants used a moving image and photographs of Plaintiff and Plaintiff's likeness and identity without Plaintiff's consent.

74. Defendants used a moving image and photographs of Plaintiff and Plaintiff's likeness and identity commercially to promote and burnish the prestige and value of their respective brands, good and service to their use and benefit by entering the Campaign into the Cannes Lions Awards festival, winning the Cannes Lions Awards and then publicizing winning the award.

75. Defendants' actions caused harm to Plaintiff in an amount to be determined at trial.

## Count II - Unfair and Deceptive Trade Practices (N.C. Gen. Stat §75-1.1)
### (Against all Defendants)

76. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 75 as if fully set forth herein.

77. Defendants, in manipulating Plaintiff's TED Talk to corroborate Defendants' position, falsified Plaintiff's endorsement of Defendants' product and provided factually unsupported and misleading claims.

78. Defendants' conduct offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

79. Defendants knew or should have known the false, misleading and deceptive character of the Campaign.

80. Defendants' distribution of the Campaign directly affected commerce.

81. As a result of Defendants' acts and omissions, Plaintiff suffered actual harm in an amount to be determined at trial.

## Count III - False Advertising, Endorsement and Light (Lanham Act § 43(a), 15 U.S.C. § 1125(a))
### (Against all Defendants)

82. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 81 as if fully set forth herein.

83. Plaintiff is the owner of all statutory and common law rights associated with her name, image, likeness and persona.

84. Plaintiff is the sole party with the right to decide whether to associate her name, image, likeness, or persona with any third party for purposes relating to sponsorship and/or endorsement.

85. Defendants used Plaintiff's name, image, likeness, or persona without permission in the Campaign.

86. Defendants' unauthorized uses of Plaintiff's name, image, likeness and persona without permission in the Campaign constitutes false or misleading representations of fact, and to falsely imply the endorsement of Defendants' brands, goods, and services by Plaintiff.

87. Defendants made false or misleading representations of fact by manipulating Plaintiff's name, image, likeness and persona to falsely imply her endorsement or sponsorship of Defendants' brands, goods, and services in the Campaign and depict Plaintiff in a false light.

88. Defendants' unauthorized use of Plaintiff's name, image, likeness and persona are offensive to any reasonable person.

89. Defendants' unauthorized use of Plaintiff's name, image, likeness and persona was undertaken with knowledge of, or reckless disregard for, the falsity or false light it placed Plaintiff in.

90. Defendants' unauthorized use of Plaintiff's name, image, likeness and persona is likely to confuse and deceive consumers as to Plaintiff's sponsorship and/or endorsement of Defendants' brands, goods and services by Plaintiff.

91. Specifically, Defendants' use of Plaintiff's name, image, and likeness is likely to cause consumers to mistakenly believe that Plaintiff is associated with Defendants' brands, goods, and services, or that she sponsors or endorses Defendants' brands, goods, and services.

92. As a direct and proximate result of the acts of false endorsement set forth above, Plaintiff has suffered actual damages in an amount to be proven at trial.

93. Plaintiff is entitled to the full range of relief available under the Lanham Act, 15 U.S.C. § 1117, including, without limitation, an award of actual damages and the disgorgement of Defendants' profits arising from their false or misleading acts.

94. Defendants' conduct further renders this an "exceptional" case within the meaning of the Lanham Act, thus entitling Plaintiff to an award of attorneys' fees and costs.

95. Defendants committed the unauthorized acts described above knowing such acts were likely to cause consumers to falsely believe that Plaintiff endorses Defendants' brands, goods, and services

### Count IV- Intentional Infliction of Emotional Distress
### (Against all Defendants)

96. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 95 as if fully set forth herein.

97. Defendants engaged in extreme and outrageous conduct.

98. Defendants engaged in extreme and outrageous conduct by altering and using Plaintiff's TED Talk, name, image, likeness and persona without consent.

99. Defendants intended, knew, or should have known, that the Campaign would cause emotional distress to the Plaintiff.

100. Defendants' conduct was intended to cause, or recklessly disregarded the likelihood of causing, severe emotional distress to Plaintiff.

101. Plaintiff suffered severe emotional distress as a result of Defendants' conduct.

### Count V - Defamation
### (Against all Defendants)

102. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 101as if fully set forth herein.

103. Defendants made false statements about Plaintiff and Plaintiff's views by altering Plaintiff's TED Talk, and by altering and manipulating Plaintiff's name, image, likeness and persona without consent.

104. Defendants published to one or more persons the altered and manipulated TED Talk and Plaintiff's name, image, likeness and persona to third parties through distribution of the Campaign.

105. The Campaign's portrayal of Plaintiff, Plaintiff's views, and Plaintiff's name, image, likeness and persona in the Campaign are false.

106. Defendants knew that the statements made in the Campaign were false or made such statements with reckless disregard for their truth.

107. The Campaign's portrayal of Plaintiff, Plaintiff's views and Plaintiff's name, image, likeness and persona in the Campaign were false.

108. The false statements caused harm to Plaintiff's reputation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays unto the Court for the following relief:

A. For compensatory damages for reputational harm and emotional distress against all Defendants in an amount to be determined at trial;

B. For consequential damages for reputational harm and emotional distress against all Defendants in an amount to be determined at trial;

C. For entry of a money judgment in favor of Plaintiff and against Defendants in an amount to be determined at trial;

D. For injunctive relief requiring the removal of the altered video from all platforms against all Defendants;

E. For punitive damages against all Defendants for grotesque, willful and malicious misconduct;

F. For prejudgment and post judgment interest as allowed by law;

G. For attorney's fees and costs as allowed by law;

H. For a trial by jury on all issues so triable; and

I. For such other and further relief as the Court deems just and proper.

THIS the 20th day of August, 2025

**THE MCHATTIE LAW FIRM, LLC**

/s/ Christopher J. McHattie
Christopher J. McHattie, Esq.
(Bar No. 035251987)
Michael V. Gattoni, Esq.
(Bar No. 238152018)
550 West Main Street
Boonton, New Jersey 07005
Telephone: 973-402-5505
Facsimile: 973-400-4110
*Attorneys for Plaintiff (Pro Hac Vice Admission Pending)*

**TLG LAW**

/s/ Alec S. Jalovec
Alec S. Jalovec (NC Bar #50793)
David G. Redding (NC Bar #24476)
2907 Providence Road, Suite 303
Charlotte, North Carolina 28211
Tel. & Fax: 704-900-2215
ajalovec@tlg-law.com
dredding@tlg-law.com
*Attorneys for Plaintiff*