# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

DEANDREA SALVADOR,

      Plaintiff,

      v.

OMNICOM GROUP INC., et al,

      Defendants.

Case No. 3:25-cv-00628

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ..........................................................................................................3

LEGAL STANDARDS ...............................................................................................................6

ARGUMENT..............................................................................................................................7

   I.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE THIS COURT LACKS
      PERSONAL JURISDICTION OVER THE DEFENDANTS........................................... 7

      A.  This Court Lacks General Jurisdiction Over Defendants ...............................................8

      B.  This Court Lacks Specific Jurisdiction Over Defendants...............................................9

  II.  THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR
      FAILURE TO STATE A CLAIM .................................................................................... 15

      A.  Plaintiff Fails to Allege a Defamation Claim .............................................................15

      B.  Plaintiff Fails to Allege an Unfair and Deceptive Trade Practices Claim ..................17

      C.  Plaintiff Fails to Allege a Lanham Act Claim ............................................................19

      D.  Plaintiff Fails to Allege a Right-of-Publicity Claim...................................................21

      E.  Plaintiff Fails to Allege an Intentional Infliction of Emotional Distress Claim ..........22

 III. THE COMPLAINT SHOULD BE DISMISSED AS TO DEFENDANTS OMNICOM,
      DDB, AND WHIRLPOOL UNDER RULE 12(b)(6) .................................................... 23

      A.  Plaintiff Has Not Alleged Facts Sufficient to Pierce the Corporate Veil ...................23

      B.  Plaintiff Has Not Alleged Direct Misconduct by Omnicom, DDB, or Whirlpool ......24

CONCLUSION...........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
600 U.S. 412 (2023)....................................................................................................19, 20

*Accu-Sport Int'l, Inc. v. Swing Dynamics, Inc.*,
367 F. Supp. 2d 923 (M.D.N.C. 2005) ................................................................12

*Adams v. Jenkins*,
2016 U.S. Dist. LEXIS 184705 (W.D.N.C. Sept. 29, 2016) ................................18

*Al-Deen v. Trs. of the Univ. of N.C. Wilmington*,
102 F. Supp. 3d 758 (E.D.N.C. 2015)..................................................................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................6

*Austin v. Georgetown Univ.*,
2021 U.S. Dist. LEXIS 131342 (N.D. Cal. July 14, 2021)...................................13

*Ball v. E. Franklin Superette & Kitchen LLC*,
2025 U.S. Dist. LEXIS 184012 (W.D.N.C. Sept. 19, 2025) .................................20

*Boyce & Isley v. Cooper*,
153 N.C. App. 25 (2002) .................................................................................15, 16

*Boykin Anchor Co. v. AT&T Corp.*,
2011 U.S. Dist. LEXIS 40783 (E.D.N.C. Apr. 14, 2011).....................................13

*Bristol-Myers Squibb Co. v. Superior Ct.*,
582 U.S. 255 (2017).................................................................................................9

*Bryant v. Core X Restoration, LLC*,
2021 U.S. Dist. LEXIS 62891 (W.D.N.C. Nov. 12, 2021)....................................24

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985).................................................................................................9

*Burleson v. Toback*,
391 F. Supp. 2d 401 (M.D.N.C. 2005) ................................................................12

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
334 F.3d 390 (4th Cir. 2003) .........................................................................10, 12

*Re Carroll Mgmt. Co. v. Dun & Bradstreet Inc.*,
   2023 U.S. Dist. LEXIS 232506 (M.D.N.C. Dec. 1, 2023) ....................................................15

*Champion v. Moda Operandi, Inc.*,
   561 F. Supp. 3d 419 (S.D.N.Y. 2021)..........................................................................................21

*Curran v. Amazon.com, Inc.*,
   2008 U.S. Dist. LEXIS 12479 (S.D.W.V. Feb. 19, 2008)......................................................21

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)............................................................................................................................8

*Deetsch v. Lei*,
   2023 U.S. Dist. LEXIS 179275 (S.D. Cal. July 21, 2023) .....................................................20

*Demastes v. Midwest Diversified Mgmt. Corp.*,
   2020 U.S. Dist. LEXIS 50606 (W.D.N.C. Mar. 24, 2020).....................................................24

*Desmond v. News & Observer Publ'g Co.*,
   263 N.C. App. 26 (2018), *rev'd in part on other grounds*, 375 N.C. 21 (2020) .....................17

*Diagnostic Devices, Inc. v. Pharma Supply, Inc.*,
   2009 U.S. Dist. LEXIS 101425 (W.D.N.C. June 19, 2009) ...................................................10

*Dixon Hughes Goodman LLP v. Kurt Salmon US Inc.*,
   2014 U.S. Dist. LEXIS 202862 (M.D.N.C. May 13, 2014) .....................................................8

*Fisher v. Walgreen, Inc.*,
   2018 U.S. Dist. LEXIS 133315 (W.D.N.C. Apr. 23, 2018) ...................................................18

*Fundamental Admin Servs., LLC v. Anderson*,
   2014 U.S. Dist. LEXIS 157871 (D. Md. Nov. 6, 2014) .........................................................21

*Grayson v. Anderson*,
   816 F.3d 262 (4th Cir. 2016) ..........................................................................................................6

*Haberland v. Bulkeley*,
   896 F. Supp. 2d 410 (E.D.N.C. 2012)...........................................................................................6

*Hall v. Charter Communs., LLC*,
   2018 U.S. Dist. LEXIS 15720 (W.D.N.C. Jan. 31, 2018) .....................................................16

*Higgs v. Brian Ct. Health & Ret./Windsor, Inc.*,
   367 F. Supp. 3d 439 (E.D.N.C. 2019)...........................................................................................15

*Hirtenstein v. Cempra, Inc.*,
   348 F. Supp. 3d 530 (M.D.N.C. 2018) .........................................................................................4

*Hudson v. Datanyze LLC*,
2025 U.S. App. LEXIS 749 (6th Cir. Jan. 13, 2025) .............................................................21

*Hunter v. Amazon.com Servs., LLC*,
2021 U.S. Dist. LEXIS 218689 (W.D.N.C. Nov. 10, 2021).....................................................16

*Jackson v. Mecklenburg Cnty.*,
2008 U.S. Dist. LEXIS 104410 (W.D.N.C. July 30, 2008)................................................15, 24

*Johnson v. Lendlease (US) Pub. P'ships LLC*,
2022 U.S. Dist. LEXIS 117888 (E.D.N.C. July 5, 2022) .................................................14, 15

*JPB Installers, LLC v. Dancker, Sellew & Douglas, Inc.*,
2017 U.S. Dist. LEXIS 104469 (M.D.N.C. July 6, 2017) ........................................................9

*LegalForce RAPC Worldwide, P.C. v. LegalForce, Inc.*,
124 F.4th 1122 (9th Cir. 2024) ...............................................................................................20

*Lostutter v. Olsen*,
2017 U.S. Dist. LEXIS 136280 (M.D.N.C. Aug. 24, 2017)......................................................20

*Mayfield v. NASCAR*,
674 F.3d 369 (4th Cir. 2012) ............................................................................................16, 17

*McEntire v. Johnson*,
2013 U.S. Dist. LEXIS 151482 (W.D.N.C. Sept. 20, 2013) ...................................................22

*Moore v. Unum Life Ins. Co. of Am.*,
2025 U.S. Dist. LEXIS 57722 (W.D.N.C. Mar. 27, 2025).......................................................17

*Moschos v. Moschos*,
287 N.C. App. 162 (2022) .......................................................................................................23

*Munoz v. SunTrust Bank*,
2016 U.S. Dist. LEXIS 72683 (W.D.N.C. June 3, 2016) .....................................................6, 25

*Murphy v. Allstate Corp.*,
2011 U.S. Dist. LEXIS 109613 (M.D.N.C. Sept. 27, 2011).............................................23, 24

*Neal Boyz Fam. Trucking, LLC v. Brewer*,
2024 U.S. Dist. LEXIS 126517 (M.D.N.C. July 18, 2024) .....................................................12

*Nobriga v. La Kumbala Loung & Rest., Inc.*,
2024 U.S. Dist. LEXIS 103864 (E.D.N.C. May 23, 2024).....................................................24

*Norton v. Scot. Mem. Hosp., Inc.*,
250 N.C. App. 392 (2016) .......................................................................................................22

iv

*Pierce v. Atl. Group, Inc.*,
219 N.C. App. 19 (2012) .........................................................................................17

*Prince v. Wright*,
141 N.C. App. 262 (2000) ......................................................................................18

*Regent Lighting Corp. v. American Lighting Concept*,
25 F. Supp. 2d 705 (M.D.N.C. 1997) ....................................................................14

*Ricketts v. Wake Cnty. Pub. Sch. Sys.*,
2022 U.S. Dist. LEXIS 462 (E.D.N.C. Jan. 3, 2022)............................................25

*Ricks v. Armstrong Int'l, Inc.*,
2014 U.S. Dist. LEXIS 86600 (E.D.N.C. June 23, 2014)........................................8

*Roberts v. Cox Communs., Inc.*,
2020 U.S. Dist. LEXIS 227342 (W.D.N.C. Dec. 3, 2020) ...................................7, 8

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .................................................................................13

*Stevens v. Town of Snow Hill*,
2021 U.S. Dist. LEXIS 107038 (E.D.N.C. June 8, 2021).......................................16

*Sysco Mach. Corp. v. DCS USA Corp.*,
143 F.4th 222 (4th Cir. 2025) ..................................................................................6

*The 'In' Porters, S.A. v. Hanes Printables, Inc.*,
663 F. Supp. 494 (M.D.N.C. 1987) ........................................................................17

*Torres v. Ishee*,
2022 U.S. Dist. LEXIS 48973 (W.D.N.C. Mar. 17, 2022)...............................22, 23

*Uhlig LLC v. Shirley*,
2011 U.S. Dist. LEXIS 31833 (D.S.C. Mar. 25, 2011) ........................................21

*Vision Motor Cars, Inc. v. Valor Motor Co.*,
981 F. Supp. 2d 464 (M.D.N.C. 2013) ....................................................................6

*Walton v. Villines*,
2021 U.S. Dist. LEXIS 154457 (W.D.N.C. July 26, 2021)....................................23

*White v. Thompson*,
364 N.C. 47 (2010) ................................................................................................18

*Williams v. Adver. Sex LLC*,
2007 U.S. Dist. LEXIS 64858 (N.D.W.V. Aug. 30, 2007) ...................................13

*Winter v. Bassett*,
    2003 U.S. Dist. LEXIS 26904 (M.D.N.C. Aug. 22, 2003)......................................................12

*Woods Int'l, Inc. v. McRoy*,
    436 F. Supp. 2d 744 (M.D.N.C. 2006) ..................................................................................14

*Yeager v. Airbus Grp. SE*,
    2021 U.S. Dist. LEXIS 38313 (C.D. Cal. Jan. 26, 2021) ......................................................13

*Young v. New Haven Advocate*,
    315 F.3d 256 (4th Cir. 2002) ..................................................................................10, 11, 12

**Statutes**

15 U.S.C. § 1125(a)(1)(A) and (B).......................................................................................19

N.C. Gen. Stat. § 1-75.4(4) ..................................................................................................10

N.C. Gen. Stat. § 75-1.1 ..................................................................................................17, 19

**Rules**

Rule 12(b)(2)..................................................................................................................1, 6, 25

Rule 12(b)(6)..........................................................................................................1, 6, 15, 23, 25

Defendants Omnicom Group Inc. ("Omnicom"), DDB Worldwide Communications Group LLC ("DDB"), Whirlpool Corporation ("Whirlpool"), DM9 Comunicacao Ltda ("DM9"), and Whirlpool Do Brasil Ltda ("Whirlpool Do Brasil") submit this brief in support of their Motion to Dismiss the Complaint under Rule 12(b)(2) or 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This action arises from an awards video (the "Video") that DM9, a Brazilian advertising agency, submitted to the Cannes Lions International Festival of Creativity in Cannes, France ("Cannes Festival") in hopes of burnishing its industry reputation and enhancing its recruitment of Portuguese-speaking talent to service its Brazilian clients. The Video—created solely for award consideration at the Cannes Festival—was a creative editorial about a hypothetical program that could help low-income Brazilian consumers buy energy-efficient Consul appliances, a brand sold primarily in Latin America but not in the United States by a Brazilian entity not named in this suit, Whirlpool S.A. After the Video won an award, allegations surfaced that artificial intelligence ("AI") had been used to alter certain content, including a TED Talk that Plaintiff Deandrea Salvador ("Plaintiff") gave in Canada. After confirming its Chief Creative Officer ("CCO") had, in fact, used AI to alter the Video, the CCO's employment was terminated and the award withdrawn. Whirlpool S.A. had no knowledge of the use of AI in the Video and terminated its contract with DM9.

Plaintiff now asserts claims arising out of the use of her TED Talk, in which she pointed out that energy costs can become "a burden" in the United States. In the Video, the CCO made the same point but altered the audio from the TED Talk to reference *Brazil*. Plaintiff asserts claims against DM9 and Whirlpool Do Brasil, the Brazilian holding company and majority owner of

1

Whirlpool S.A., and their indirect parent companies, for defamation, false endorsement, violation of right-of-publicity, deceptive trade practices, and intentional infliction of emotional distress.

The Complaint should be dismissed because, as a threshold matter, Plaintiff has not alleged facts sufficient to exercise personal jurisdiction over the Defendants. DM9 is a Brazilian agency that entered an international competition in France in hopes of enhancing its reputation in Brazil. DM9's actions were not directed toward the United States, much less North Carolina. Whirlpool Do Brasil is a Brazilian company that did not create, produce, or submit the Video, does not target U.S. consumers, and, as a holding company, does not manufacture, market, or sell products anywhere in the world.[1] The Consul-branded products featured in the Video, sold by non-party Whirlpool S.A., are primarily sold in Latin America and are not sold in North Carolina or anywhere in the United States. Parent companies Omnicom, DDB, and Whirlpool have been roped into this suit simply because they are based in the U.S.; they did not create, produce, or submit the Video, and they are not incorporated or based in North Carolina.

Plaintiff seems to contend that there is jurisdiction because the Video—which was neither a "Campaign" nor an advertisement—was posted on the internet and resulted in alleged damages to her in North Carolina. But the law is clear that Plaintiff's alleged injury in North Carolina is not enough as a matter of law. In addition, the Fourth Circuit has repeatedly held that merely making content available online does not establish personal jurisdiction, even if the content discusses a North Carolina resident and can be accessed in North Carolina. Instead, Plaintiff must show that the Video was expressly aimed at North Carolina viewers, which she cannot do.

Alternatively, or in addition, the Complaint should be dismissed for failure to state a claim.

---

[1] Plaintiff brings this action only against Whirlpool Do Brasil, the holding company, and not Whirlpool S.A., the operating company that sells Consul-branded products in Brazil.

Across the board, Plaintiff fails to allege facts sufficient to support her claims. First, the defamation claim fails because she has not identified any specific false statements; as a public figure, she must allege malice but does not; and she does not—and cannot—allege how minor, non-disparaging changes to a single sentence have subjected her to the kind of reputational damage necessary to state an actionable claim. Second, Plaintiff's deceptive practices claim fails because she does not allege facts indicating that the Video affected North Carolina commerce or consumers. Third, Plaintiff's Lanham Act claim fails because, among other reasons, she fails to plead that the Video was used in domestic commerce or that her appearance in the Video could cause any confusion as to endorsement. Fourth, Plaintiff's right-of-publicity claim fails because she has not alleged that her image and likeness hold commercial value. Fifth, Plaintiff's intentional infliction of emotional distress ("IIED") claim fails because she has not identified any extreme and outrageous conduct or actionable distress.

Finally, the Complaint fails to allege facts sufficient to hold the corporate parents, Omnicom, DDB, or Whirlpool, liable for any claim. Plaintiff offers only a handful of conclusory statements that these parent companies "approved" or "contributed" to the Video, and otherwise impermissibly groups all "Defendants" together. This is not sufficient to hold Omnicom, DDB, or Whirlpool responsible directly or for any alleged misconduct by their subsidiaries. For these reasons and those discussed herein, the Court should dismiss the Complaint in its entirety.

## STATEMENT OF FACTS

DM9 is a Brazilian advertising agency based in Sao Paolo. Compl. ¶ 10; Calazans Decl. ¶ 3. DM9's clients are almost exclusively Brazilian companies, whose advertising is almost exclusively targeted to Portuguese-speaking consumers in Brazil. Calazans Decl. ¶ 4. Among other services, DM9 produced advertising for Whirlpool S.A.'s Consul brand of home appliances. *Id*. ¶ 6. Whirlpool S.A., which is not a named party, markets and sells the Consul brand primarily

in Latin America and not in the United States. Quinn Decl. ¶¶ 17-18. Whirlpool Do Brasil is a Brazilian holding company that does not market or sell any products anywhere in the world. *Id*. ¶¶ 6, 10. DM9's advertising work for Consul was thus directed solely toward consumers located in Latin America. Calazans Decl. ¶¶ 7-8. DM9 does not have or seek clients in the United States, or otherwise direct advertising towards consumers in the United States. *Id*. ¶ 5.

The Cannes Festival is an annual international awards competition for the advertising industry that takes place in Cannes, France. Compl. ¶ 22; Calazans Decl. ¶ 9. Winning awards at industry competitions like the Cannes Festival can enhance DM9's creative reputation in the advertising industry and potentially enhance its ability to recruit talented creative employees. Calazans Decl. ¶¶ 10-12. Because DM9 is a Brazilian agency, DM9's goal in submitting "Case Studies" to the Cannes Festival is to enhance DM9's ability to recruit Portuguese-speaking creative employees to work for DM9 in Brazil. *Id*. ¶ 12.

In 2025, Icaro Doria, DM9's then Co-President and CCO, submitted for DM9 a Case Study called the "Efficient Way to Pay" to the Cannes Festival for several categories of awards, including the "Creative Data" category (the "DM9 Case Study"). *Id*. ¶¶ 13-15. The Video, which was submitted for the DM9 Case Study, described a hypothetical program in which low-income Brazilian consumers could be able to purchase new energy-efficient Consul appliances for no money down and then pay for the products over time using savings from their energy bills resulting from use of more energy-efficient appliances. *Id*. ¶ 15, Ex. 1; Compl. ¶¶ 39-40.[2] This energy-efficiency program does not exist and therefore was never advertised to any consumers. Quinn

---

[2] Plaintiff did not attach the Video or the TED Talk to the Complaint, but she refers to them extensively and bases all claims on them. *See, e.g*., Compl. ¶¶ 31-58, 64, 64-66. Accordingly, the Video and TED Talk are incorporated by reference into the Complaint, and the Court can consider their contents in deciding this motion. *See Hirtenstein v. Cempra, Inc*., 348 F. Supp. 3d 530, 549 (M.D.N.C. 2018).

Decl. ¶ 20.  The Video was not advertising work created for Consul and was never circulated or distributed as part of an advertising campaign targeting consumers, either in Brazil or elsewhere. Calazan Decl. ¶ 19.  Rather, it was a bespoke video created solely by DM9 for award consideration at the Cannes Festival.  *Id.* ¶¶ 15-17, 19.  Videos submitted for award consideration are posted on a Cannes Festival website behind a paywall, meaning they can only be accessed by those who pay for access to the site.  *Id.* ¶ 18.  DDB, Omnicom, Whirlpool, and Whirlpool Do Brasil did not create or produce the Video, nor were they involved in submitting the Video to Cannes.  *Id.* ¶ 17; Cohen Decl. ¶ 10; Walker Decl. ¶ 5; Quinn Decl. ¶¶ 22-23.

On June 19, 2025, DM9 won a Creative Data award at the Cannes Festival for the Video. Compl. ¶ 52; Calazans Decl. ¶ 21.  Shortly thereafter, news broke that AI had been used to manipulate excerpts of Plaintiff's TED Talk.  Compl. ¶¶ 41, 49; Calazans Decl. ¶ 22.  In the TED Talk, Plaintiff discusses the heavy burden energy costs place on low-income populations in the United States.[3]  Specifically, Plaintiff states: "People are faced with impossible choices . . . <u>In contrast, low income and rural populations can spend 20, even 30, percent of their income on energy</u> . . . This is when energy becomes a burden."[4]

The Video included three sentences that appeared to be a short excerpt from the TED Talk.  In the Video, Plaintiff appears to state: "People are faced with impossible choices.  <u>In low-income communities in Sao Paolo, the average electricity bill cost represents 30% of their monthly income</u>.  This is when energy becomes a burden."  Calazans Decl., Ex. 1 at 0:27-0:40 (emphasis added).  The first and third sentences, along with contemporaneous images in the Video of Plaintiff

---

[3] *See generally* Deandrea Salvador, *How We Can Make Energy More Affordable for Low-Income Families*, TED (April 2018), https://www.ted.com/talks/deandrea_salvador_how_we_can_make_energy_more_affordable_for_low_income_families.

[4] *Id.* at 0:46 to 1:12 (emphasis added).

speaking on the TED stage, are identical to what is contained in the TED Talk. *Id.* In the Video, the second sentence is an alleged AI-generated voiceover, heard while a chart is onscreen. *Id.* DM9's now-former CCO altered the audio from the TED Talk using audio AI and inserted the sentence about energy costs in Sao Paolo. Calazans Decl. ¶¶ 16, 24-25. After allegations about AI use were investigated, the Creative Data award was rescinded and Whirlpool S.A. fired DM9. *Id.* ¶¶ 25, 27. The Video is no longer available on the Cannes Festival website. *Id.* ¶ 26.

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff must make a *prima facie* showing that the court has jurisdiction over the defendants. *See Grayson v. Anderson*, 816 F.3d 262, 267-68 (4th Cir. 2016). The Court need not accept conclusory allegations as true. *Vision Motor Cars, Inc. v. Valor Motor Co.*, 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013). The Court may rely on "the parties' motion papers, affidavits . . . [and] legal memoranda," *Grayson*, 816 F.3d at 268, and does not take as true allegations that are "controverted by evidence from the defendant," *Vision Motor Cars, Inc.*, 981 F. Supp. 2d at 468.

Under Rule 12(b)(6), the complaint must contain allegations "sufficient to support 'a claim to relief that is plausible on its face.'" *Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 228 (4th Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While courts "accept the plaintiff's factual allegations as true at the pleading stage . . . [a] plausible claim to relief demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted). If a conclusory allegation is contradicted by other specific allegations or materials explicitly referenced in the complaint, courts need not take the conclusory allegations as true. *See Munoz v. SunTrust Bank*, 2016 U.S. Dist. LEXIS 72683, at *21 (W.D.N.C. June 3, 2016) (crediting "the vast amount of other, more specific allegations" rather than plaintiff's "conclusory" and "contradictory" allegation in complaint); *Haberland v. Bulkeley*, 896 F. Supp. 2d 410, 419-20

(E.D.N.C. 2012) ("[C]ourts need not accept as true a plaintiff's factual allegations to the extent they contradict such documents" incorporated by reference).

## ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS

Plaintiff fails to demonstrate that any of the Defendants are subject to personal jurisdiction in North Carolina. Plaintiff's personal jurisdiction theory is based on two conclusory allegations: (i) that Defendants "caused injury within North Carolina," which was "foreseeable" based on the Video's "international circulation," and (ii) that Defendants' unspecified "products and services are used and consumed within North Carolina in the ordinary course." Compl. ¶¶ 19-20, 28. Courts within the Fourth Circuit have repeatedly held, however, that neither of these allegations is sufficient to establish general or specific jurisdiction. This is particularly true here because the Video was created by DM9, a Brazilian entity that provides services to Brazilian and/or South American clients, to highlight DM9's creative work for Consul, a brand sold primarily in Latin America and not in the United States. Calazans Decl. ¶ 4; Quinn Decl. ¶¶ 17-18. Plaintiff's effort to get around this jurisdictional hurdle by roping in U.S.-based parent companies—baselessly alleging that they "approved" or "endorsed" the Video—is likewise unavailing. Compl. ¶¶ 39, 43.

To establish personal jurisdiction over a non-resident defendant, a plaintiff must show that the exercise of personal jurisdiction (1) is "authorized by the long-arm statute of [North Carolina]"; and (2) comports with the Fourteenth Amendment's Due Process Clause. *Roberts v. Cox Communs., Inc.*, 2020 U.S. Dist. LEXIS 227342, at **6-7 (W.D.N.C. Dec. 3, 2020). North Carolina's long-arm statute permits "personal jurisdiction to the outer bounds of due process." *Id.* at *7. Consistent with due process, the defendant "must have sufficient minimum contacts with the forum state, such that the maintenance of the suit does not offend traditional notions of fair

play and substantial justice." *Id.* at *8 (citations omitted). Courts exercise jurisdiction over nonresidents through "general jurisdiction" or "specific jurisdiction." *Id*. at **7-8.

### A. This Court Lacks General Jurisdiction Over Defendants

A court may assert general jurisdiction over a corporate defendant when its contacts with the forum state "are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citations omitted). A corporate defendant is typically only "at home" in a state where it is incorporated or has its principal place of business. *See id*. at 137. No Defendant is incorporated in North Carolina or has its principal place of business there. Omnicom is incorporated and has its principal place of business in New York. Cohen Decl. ¶¶ 3-4. DDB is incorporated in Delaware and has its principal place of business in New York. Cunningham Decl. ¶¶ 2-3. Whirlpool is incorporated in Delaware and has its principal place of business in Michigan. Quinn Decl. ¶¶ 2-3. And DM9 and Whirlpool Do Brasil are incorporated and have principal places of business in Brazil. *Id*. ¶¶ 6, 9; Calazans Decl. ¶ 3.

Nor is Plaintiff's conclusory allegation that Defendants' unspecified "products and services" are used or consumed in North Carolina sufficient to confer general jurisdiction. Even if a corporate defendant "engages in a substantial, continuous, and systematic course of business" in the forum state, this is not enough to confer general jurisdiction. *Daimler*, 571 U.S. at 137-38. Without more, courts within the Fourth Circuit decline to assert general jurisdiction over defendants even when a substantial portion of their products or business are present in the forum state. *See, e.g.*, *Dixon Hughes Goodman LLP v. Kurt Salmon US Inc*., 2014 U.S. Dist. LEXIS 202862, at **5-7 (M.D.N.C. May 13, 2014) (holding that out-of-state corporate defendant was not subject to general jurisdiction despite consistent sales within the forum state); *Ricks v. Armstrong Int'l, Inc.*, 2014 U.S. Dist. LEXIS 86600, at *6 (E.D.N.C. June 23, 2014) (similar).

Even if such allegations of in-state business activity could be sufficient, the Complaint utterly fails to allege them here. Plaintiff does not allege which of Defendants' products or services are sold in North Carolina, whether they make up a significant portion of Defendants' businesses, or which specific Defendants are responsible for which products and services. Moreover, DM9 does not sell products in the United States or have any United States-based clients, and Whirlpool Do Brasil does not sell any products anywhere in the world.[5] Calazan Decl. ¶ 5; Quinn Decl. ¶ 10. Plaintiff's conclusory allegations therefore cannot establish general jurisdiction over any Defendant. *See JPB Installers, LLC v. Dancker, Sellew & Douglas, Inc.*, 2017 U.S. Dist. LEXIS 104469, at **10-11 (M.D.N.C. July 6, 2017) (no general jurisdiction where complaint made only "conclusory" allegations that defendant conducted "significant" business in the forum state).

## B. This Court Lacks Specific Jurisdiction Over Defendants

Plaintiff also cannot establish specific jurisdiction because Defendants have not purposefully availed themselves of North Carolina and any purported contacts with the state are unrelated to Plaintiff's claims. Specific jurisdiction requires that "the *suit* . . . aris[es] out of or relat[es] to the defendant's contacts with the *forum*," such that there is "an affiliation between the forum and the underlying controversy . . . ." *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017) (citations omitted). This requirement protects defendants from being "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted). When analyzing specific jurisdiction, the Fourth Circuit assesses "(1) whether the defendant purposefully availed itself of the privileges of conducting activities in the forum state, (2) whether the plaintiff's claim arises out of the

---

[5] Any amendment to add Whirlpool S.A. as a defendant would be futile because Whirlpool S.A. does not provide or sell any services or products in the United States and thus is not subject to personal jurisdiction in this Court. Quinn Decl. ¶ 18.

defendant's forum-related activities, and (3) whether the exercise of personal jurisdiction over the defendant would be constitutionally reasonable." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (citations omitted). Plaintiff cannot satisfy these requirements.

### 1. The Video Did Not Target a North Carolina Audience

Plaintiff's theory of jurisdiction boils down to the claim that the Video "was widely distributed" online "with the foreseeable consequence" that it would "reach U.S. audiences" and cause injury to her in North Carolina. Compl. ¶¶ 28, 51. Those allegations are insufficient.

North Carolina's long-arm statute and Fourth Circuit precedent are clear that an alleged injury in North Carolina cannot itself establish specific jurisdiction. Jurisdiction arises where there is an "injury to [a] person" within North Carolina "<u>provided in addition that</u> . . . [s]olicitation or services activities were carried on within this State . . . [or] [p]roducts . . . by the defendant were used or consumed, within this State in the ordinary course of trade." N.C. Gen. Stat. § 1-75.4(4) (emphasis added). The place of injury "must ultimately be accompanied by defendant's own [sufficient minimum] contacts with the state." *Young*, 315 F.3d at 262 (citations omitted).

Accordingly, Plaintiff must also establish that Defendants "expressly aimed" the Video at North Carolina by "manifest[ing] an intent to target and focus on" North Carolina viewers. *Id.* at 263. Merely making content available on the internet is not sufficient, even if this content can be viewed by North Carolina residents or relates to North Carolina residents. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 398 (4th Cir. 2003) (considering whether defendant "'expressly aimed' its allegedly unlawful online conduct at [the forum state]"); *Young*, 315 F.3d at 263 ("[The] act of placing information on the Internet is not sufficient by itself to subject[] that person to personal jurisdiction in each State in which the information is accessed.") (citations omitted); *Diagnostic Devices, Inc. v. Pharma Supply, Inc.*, 2009 U.S. Dist. LEXIS 101425, at *4, *21 (W.D.N.C. June 19, 2009) (dismissing unfair competition and defamation case

10

as to website owners who "had no discernible connection with North Carolina other than the availability of [defendants'] Web site to North Carolina users").

Plaintiff does not, and cannot, allege that the Video was intended to target a North Carolina audience. DM9, a Brazilian company, was solely responsible for creating the Video. Calazans Decl. ¶¶ 16-17. DM9 submitted the Video to the Cannes Festival in France to boost its creative reputation in the international advertising community and enhance its ability to recruit quality Portuguese-speaking employees to work in Brazil. *Id*. ¶ 12. Consul, the brand featured in the Video, is sold primarily in Latin America and not in the United States. Quinn Decl. ¶¶ 17-18. The Video concerned a hypothetical energy program in Brazil and was never distributed as part of an advertising campaign to target any consumers, Brazilian or otherwise. Calazans Decl. ¶¶ 15, 19; Quinn Decl. ¶ 20. The Video was directed to the Cannes Festival judges in France and potential marketing employees in Brazil, not to anyone in North Carolina. *Id*. ¶¶ 9, 12, 19-20.

It is well settled that Plaintiff's status as a North Carolina resident does not establish that Defendants purposeful availed themselves of the forum. In *Young*, for example, a Virginia prison warden brought defamation claims against a Connecticut newspaper and its employees for posting articles on the newspaper's website about his alleged mistreatment of prisoners. 315 F.3d at 259. The newspaper defendants moved to dismiss for lack of personal jurisdiction, which the District Court denied. *Id*. at 260. The Fourth Circuit reversed, holding that the District Court lacked specific jurisdiction because the websites and articles did not "manifest [an] intent of targeting Virginia readers" given that "their general thrust and content" was "decidedly local," did not "contain[] advertisements aimed at a Virginia audience," and were "not designed to attract or serve a Virginia audience." *Id*. at 263-64. In doing so, the Fourth Circuit expressly rejected plaintiff's argument that the newspaper defendants had sufficient contacts with the forum state solely because

they "kn[ew] that [plaintiff] was a Virginia resident, intentionally discussed and defamed him in their articles," and "posted the articles on their websites, which were accessible in Virginia." *Id*. at 261-62*; see also Burleson v. Toback*, 391 F. Supp. 2d 401, 404, 415 (M.D.N.C. 2005) (no specific jurisdiction over out-of-state defendants who allegedly posted libelous content about a North Carolina resident on websites whose "general thrust and content" made clear that they were intended "to target and focus on individuals . . . all over the world, no matter what their geographic location," rather than "intend[ed] to target North Carolina.").

Here too, the "thrust" of the Video makes clear that it was directed to the Cannes Festival judges and potential Brazilian marketing employees, or at most a broader international advertising professionals audience, rather than a North Carolina audience. Accordingly, in keeping with numerous other decisions within the Fourth Circuit, this Court lacks specific jurisdiction over DM9, the Brazilian entity exclusively responsible for producing and submitting the Video, Whirlpool Do Brasil, the Brazilian holding company whose subsidiary sells Consul-branded products primarily in Latin America, or Whirlpool S.A., the Brazilian operating company that sells those products. *See, e.g., Neal Boyz Fam. Trucking, LLC v. Brewer*, 2024 U.S. Dist. LEXIS 126517, at *4, *13 (M.D.N.C. July 18, 2024) (dismissing defamation and IIED case; plaintiffs did not allege "any fact to even permit the inference that [defendants' website] directs electronic activity into North Carolina"); *Accu-Sport Int'l, Inc. v. Swing Dynamics, Inc.*, 367 F. Supp. 2d 923, 924-25, 927 (M.D.N.C. 2005) (dismissing slander and deceptive practices case; misleading statements were not "uttered in North Carolina or directed to potential customers in North Carolina"); *Winter v. Bassett*, 2003 U.S. Dist. LEXIS 26904, at *7, **18-19 (M.D.N.C. Aug. 22, 2003) (dismissing defamation, deceptive practices, and IIED claims because the "internet postings and websites were not specifically directed to residents or businesses in North Carolina"); *Carefirst*

*of Md., Inc.,* 334 .3d at 393, 401 (dismissing trademark infringement case; online content at issue "ha[d] a strongly local character, emphasizing that [defendant's] mission is to assist *Chicago-area* women"); *Williams v. Adver. Sex LLC*, 2007 U.S. Dist. LEXIS 64858, at *4, **14-16 (N.D.W.V. Aug. 30, 2007) (dismissing right-of-publicity and defamation claims; plaintiff failed to establish "any evidence of [defendant's] actual contact with North Carolina users of the Internet").

Similarly, courts in other Circuits routinely dismiss right-of-publicity claims for lack of jurisdiction for the same reasons. *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 799, 807 (9th Cir. 2004) (affirming dismissal of right-of-publicity claim; ad was "aimed at Ohio rather than California"); *Austin v. Georgetown Univ.*, 2021 U.S. Dist. LEXIS 131342, at **10-11 (N.D. Cal. July 14, 2021) (dismissing right-of-publicity claims; brochure wasn't targeted to "California-specific audience"); *Yeager v. Airbus Grp. SE*, 2021 U.S. Dist. LEXIS 38313, at *4, *17 (C.D. Cal. Jan. 26, 2021) (dismissing right-of-publicity and Lanham Act claims; no evidence "website targets California consumers above and beyond consumers in any other geographic locations").

### 2. *Plaintiff Cannot Establish Specific Jurisdiction Over the U.S. Defendants*

Perhaps recognizing that DM9 and Whirlpool Do Brasil's lack of U.S. ties precludes haling them into court here, Plaintiff pins her hopes on their U.S.-based parent companies. The Complaint lacks any specific allegations that Omnicom, DDB, or Whirlpool participated in creating, producing, or submitting the Video, and instead bases its claims on the conclusory theory that they "approved" or "endorsed" it. Compl. ¶¶ 39, 43. That is insufficient. "[P]laintiff has offered no more than bare allegations that the defendants acted 'in concert,' which is insufficient to establish specific jurisdiction here." *Boykin Anchor Co. v. AT&T Corp.*, 2011 U.S. Dist. LEXIS 40783, at **7-8 (E.D.N.C. Apr. 14, 2011). And in any event, the Complaint's allegations are false, as

Omnicom, DDB, and Whirlpool were not involved in the creation, production, or submission of the Video. Cohen Decl. ¶ 10; Walker Decl. ¶ 5; Quinn Decl. ¶¶ 22-23.

Even if Plaintiff had sufficiently alleged that the U.S.-based Defendants were responsible for the Video, that alone would still be insufficient because the Video does not target a North Carolina audience (*see supra*, Section I.B.1), and the U.S.-based Defendants are not alleged to have undertaken acts in North Carolina (*see supra*, Section I.A). Again, Plaintiff tries to manufacture personal jurisdiction over Omnicom, Whirlpool, and DDB by alleging that their unspecified "products and services are used and consumed within North Carolina." Compl. ¶ 20. But she does not, and cannot, allege that any in-state "products and services" provided by them relate to her claims, which solely concern the Video—which was not an advertisement at all, but rather an awards show submission, and was created in Brazil, about Brazil, for a primarily Brazilian audience of marketing professionals with interest in the Cannes Festival. Calazans Decl. ¶¶ 11-12, 15, 19. Because any products sold or services provided in North Carolina by Omnicom, DDB, or Whirlpool are unrelated to the Video and suit, specific jurisdiction is absent. *See Regent Lighting Corp. v. American Lighting Concept*, 25 F. Supp. 2d 705, 711-12 (M.D.N.C. 1997) (no specific jurisdiction where "[t]he only products manufactured by [d]efendants which did enter North Carolina are entirely unrelated to the present suit"); *Woods Int'l, Inc. v. McRoy*, 436 F. Supp. 2d 744, 751 (M.D.N.C. 2006) (no specific jurisdiction where "claims in the present case d[id] not 'arise out of'" defendant's prior shipment of products to forum state).

Lastly, even if DM9 and Whirlpool Do Brasil had sufficient contacts with North Carolina to confer jurisdiction (which they do not), those contacts cannot be imputed to the U.S.-based Defendants. "[T]he court may impute the contacts of [subsidiaries] to their parent companies . . . [only if] the corporation is . . . a mere instrumentality or alter ego" of the parent. *Johnson v.*

*Lendlease (US) Pub. P'ships LLC*, 2022 U.S. Dist. LEXIS 117888, at *22 (E.D.N.C. July 5, 2022);

*Re Carroll Mgmt. Co. v. Dun & Bradstreet Inc*., 2023 U.S. Dist. LEXIS 232506, at **7-8

(M.D.N.C. Dec. 1, 2023) (personal jurisdiction over a subsidiary "is not enough to confer

jurisdiction over its parent" absent "any evidence that the separate existence of the two companies

is a mere sham") (citations omitted).  Plaintiff does not, and cannot, allege any such specific facts

here, relying instead on conclusory allegations of control that are plainly insufficient.  *See Higgs*

*v. Brian Ct. Health & Ret./Windsor, Inc.*, 367 F. Supp. 3d 439, 449-50 (E.D.N.C. 2019) (declining

to impute subsidiary's contacts to parent; plaintiff offered only "conclusory statement that all the

defendants . . . exercise [substantial] control"); *Johnson*, 2022 U.S. Dist. LEXIS 117888, at *22

(declining to impute subsidiaries' contacts to parents based on "general allegations concerning

defendants' corporate structure and lack of 'corporate separateness'").

## II.  THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM

Alternatively, the Court should dismiss the Complaint in its entirety for failure to state

claims upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).

### A.  Plaintiff Fails to Allege a Defamation Claim

Plaintiff's defamation claim fails as a matter of law.  Defamation requires "a false <u>and</u>

defamatory statement, of or concerning plaintiff, which was published to a third person and caused

injury to plaintiff's reputation." *Jackson v. Mecklenburg Cnty.*, 2008 U.S. Dist. LEXIS 104410,

at **12-13 (W.D.N.C. July 30, 2008) (emphasis added).  Statements are only defamatory if they

"disgrace and degrade the party or hold [her] up to public hatred, contempt or ridicule, or cause

[her] to be shunned or avoided." *Boyce & Isley v. Cooper*, 153 N.C. App. 25, 31 (2002) (citations

omitted).  Moreover, because Plaintiff is a public figure, she must allege facts demonstrating that

a "defamatory statement was made with actual malice; that is, with knowledge that it was false or

15

with reckless disregard of whether it was false or not." *Mayfield v. NASCAR*, 674 F.3d 369, 377 (4th Cir. 2012) (citations omitted). Plaintiff fails to allege any of those necessary elements.

First, the Complaint does not adequately allege a false statement. Plaintiff offers conclusory allegations that "Defendants made false statements about [her] and [her] views" but does not describe what the statements were or explain how they were false. Compl. ¶ 103. Courts routinely dismiss defamation claims that do not identify the false statement and "allege <u>why</u> the statement was false." *Hunter v. Amazon.com Servs., LLC*, 2021 U.S. Dist. LEXIS 218689, at *16 (W.D.N.C. Nov. 10, 2021) (dismissing claim); *Stevens v. Town of Snow Hill*, 2021 U.S. Dist. LEXIS 107038, at *14 (E.D.N.C. June 8, 2021) (same); *Hall v. Charter Communs., LLC*, 2018 U.S. Dist. LEXIS 15720, at **5-6 (W.D.N.C. Jan. 31, 2018) (same).

Second, the Complaint does not plausibly allege that any statement was defamatory. Plaintiff's failure to identify the "false" portions of the Video is convenient because a comparison with the TED Talk reveals that the altered language could not possibly cause the level of "disgrace" or "degradation" necessary to support a defamation claim. *Boyce & Isley*, 153 N.C. App. at 31. In the TED Talk, Plaintiff states that in the United States, "low income and rural populations can spend 20, even 30 percent of their income on energy." *See supra* n.4. In the Video, she seems to say that "[i]n low-income communities in Sao Paolo, the average electricity bill cost represents 30% of their monthly income." Calazans Decl., Ex. 1 at 0:27-0:40. Plaintiff does not allege that she disagrees with the proposition stated in the Video, much less suggest that being associated with such a proposition could subject her to the level of disgrace and ridicule sufficient to state a defamation claim. Nor could she, as it appears to convey an idea that, based on the TED Talk itself, she would likely support and agree with. *See supra* n.3. Plaintiff's conclusory allegations that the Video "subjected her to ridicule and embarrassment" and "misrepresented both [her]

message and values" are insufficient; they are not only unsupported by factual allegations, but also contradicted by the actual words contained in the Video. Compl. ¶¶ 61, 63; Calazans Decl., Ex. 1 at 0:27-0:40. On its face, this is not a case where a negative falsehood was told about Plaintiff or where the statement "indicates a negative personal trait or an attitude the speaker does not hold." *See Desmond v. News & Observer Publ'g Co.*, 263 N.C. App. 26, 62 (2018), *rev'd in part on other grounds*, 375 N.C. 21 (2020) (citations omitted).

As a result, the Complaint fails to plausibly allege any false statement that rises to the level of degradation or contempt required. *See Al-Deen v. Trs. of the Univ. of N.C. Wilmington*, 102 F. Supp. 3d 758, 769 (E.D.N.C. 2015) (dismissing claim where the "statements simply fall woefully short of . . . permit[ting] the Court to find *as a matter of law* that they would tend to disgrace or degrade plaintiff or cause her to be shunned or avoided"); *Pierce v. Atl. Group, Inc*., 219 N.C. App. 19, 34-35 (2012) (similar). The Complaint also fails to allege knowledge of any false statement by Defendants Omnicom, DDB, Whirlpool, and Whirlpool Do Brasil, and should be dismissed for its additional failure to plead malice. *Mayfield*, 674 F.3d at 378 (dismissing claim based only on "conclusory allegation" that defendants knew statements were false when made).

### B. Plaintiff Fails to Allege an Unfair and Deceptive Trade Practices Claim

Plaintiff's unfair and deceptive practices claim fails because she does not (and cannot) allege that the Video had any effect on North Carolina consumers or businesses. Under N.C. Gen. Stat. § 75-1.1, Plaintiff must allege that Defendants "(1) committed an unfair or deceptive act or practice, that (2) was in or affecting commerce, which (3) proximately caused Plaintiff's injury." *Moore v. Unum Life Ins. Co. of Am*., 2025 U.S. Dist. LEXIS 57722, at *15 (W.D.N.C. Mar. 27, 2025). The statute applies only to alleged misconduct that substantially affects commerce in North Carolina. *See The 'In' Porters, S.A. v. Hanes Printables, Inc*., 663 F. Supp. 494, 502 (M.D.N.C. 1987) (stating that N.C. Gen. Stat. § 75-1.1 addresses "primarily local concerns" and declining to

17

apply it "in cases having only an incidental local effect"). Further, because "commerce" only encompasses "business activities," which "connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods," *White v. Thompson*, 364 N.C. 47, 51-52 (2010), the statute only "covers acts between a business with another business(es) or a business with a consumer(s)," *Fisher v. Walgreen, Inc.*, 2018 U.S. Dist. LEXIS 133315, at *25 (W.D.N.C. Apr. 23, 2018) (citations omitted).

Here, Plaintiff does not allege any injury to an in-state business or allege how the use of her image in the Video injured or deceived North Carolina consumers. Nor can she, as the Video—created by a Brazilian company, describing a Brazilian program, featuring a brand sold primarily in Latin America, for sole use in the Cannes Festival—was not directed to North Carolina consumers. Calazans Decl. ¶¶ 11-12, 15, 19; Quinn Decl. ¶ 17.

The absence of factual allegations that Defendants' purported misconduct had an impact on North Carolina commerce is unsurprising because the crux of Plaintiff's Complaint is that the Video caused individual harm to her. Compl. ¶¶ 60-63, 68-70. But individual harm is not a basis for a deceptive-practices claim under North Carolina law. The Complaint does not, and cannot, allege that the Video affected North Carolina consumers or implicated any business activities. Plaintiff's conclusory allegations that Defendants' conduct is "substantially injurious to consumers" is unsupported and belied by the specific facts alleged about the Cannes Festival and the Video itself. Compl. ¶ 78. This is fatal to Plaintiff's deceptive practices claim. *See Prince v. Wright*, 141 N.C. App. 262, 269 (2000) (affirming dismissal where consumers were "not encouraged to act in any commercial manner as a result of the report [containing misleading statements]," nor "change[d] their position in reliance on the report"); *Adams v. Jenkins*, 2016 U.S. Dist. LEXIS 184705, at *5 (W.D.N.C. Sept. 29, 2016) (recommending dismissal where "[p]laintiff

was neither a seller nor a consumer in relation to any of the [d]efendants"). Here, any effect that the Video may have had on Plaintiff individually in her role as an elected official does not relate to any "business activities" or "commerce." Compl. ¶¶ 66-67. Accordingly, Plaintiff's deceptive practices claim under N.C. Gen. Stat. § 75-1.1 should be dismissed.

### C. Plaintiff Fails to Allege a Lanham Act Claim

Plaintiff styles her Lanham Act claim as a "false advertising" claim and relies on such claim to support this Court's jurisdiction. Compl. ¶ 17 & Count III. Yet, the Complaint pleads only false endorsement, and not any of the elements required to state an independent false advertising claim. *See* 15 U.S.C. § 1125(a)(1)(A) and (B). The substance of her allegations exclusively focus on how the Video "falsely impl[ies] her endorsement or sponsorship." Compl. ¶¶ 86-87, 90-91. Accordingly, despite the label "false advertising," no false advertising claim has been pled.

The false endorsement claim fails because, among other reasons, she does not allege that the Video was used in domestic commerce. The Supreme Court recently held that Section 43 of the Lanham Act does not apply extraterritorially to alleged misconduct that takes place entirely abroad. *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 421 (2023). Plaintiff therefore must allege that her image and likeness was "use[d] in commerce" by Defendants domestically. *Id.* at 423, 428. Because of the purely extraterritorial nature of the Video and its use, Plaintiff cannot satisfy that standard. As Plaintiff concedes, the Video was created and submitted by a Brazilian advertising agency to the Cannes Festival in France. Compl. ¶¶ 7, 10, 12, 22, 37, 45. It exclusively features a Latin American brand and discusses local issues impacting low-income Brazilians. Calazans Decl. ¶¶ 8, 15, Ex. 1. Plaintiff does not, and cannot, allege that the Video was used to market products to United States consumers. The Video was not used in domestic commerce—*i.e.*, used to sell or market products or services in the United States—so the Lanham

Act claim should be dismissed. *See LegalForce RAPC Worldwide, P.C. v. LegalForce, Inc.*, 124 F.4th 1122, 112627 (9th Cir. 2024) (upholding dismissal because defendant's "services are all outside the United States, so the Lanham Act cannot apply to them").[6]

Plaintiff's claim should also be dismissed because she fails to allege that her image and likeness is a "mark" under the Lanham Act. "Under the [Lanham] Act, the term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, where the mark serves to identify and distinguish [the mark user's] goods . . . and to indicate the source of the goods." *Abitron*, 600 U.S. at 428 (citations omitted). To allege that her image and likeness constitute such a mark, Plaintiff must "use[] [it] in a manner that identif[ies] and distinguish[es] . . . her goods . . . from those manufactured or sold by others and to indicate the source of the goods." *Ball v. E. Franklin Superette & Kitchen LLC*, 2025 U.S. Dist. LEXIS 184012, at *8 (W.D.N.C. Sept. 19, 2025). Because Plaintiff has failed to plead any facts indicating that she is currently using or intends to use her image and likeness for a commercial purpose, her Lanham Act claim should be dismissed. *See id.* at *4, *9 (dismissing false association claim where plaintiffs failed to plead use or intent to use their image and likeness in commerce). Nor has Plaintiff alleged any facts indicating that her likeness and image have acquired secondary meaning recognizable to consumers as having a "commercial purpose" or denoting association with a particular business. *See Lostutter v. Olsen*, 2017 U.S. Dist. LEXIS 136280, at **34-35 (M.D.N.C. Aug. 24, 2017); *Deetsch v. Lei*, 2023 U.S. Dist. LEXIS 179275, at *21 (S.D. Cal. July 21, 2023) (dismissing false association claim because "Plaintiff does not allege . . . any facts that would establish that his likeness is recognizable by would-be consumers" targeted by the products).

---

[6] Because *Abitron* applies with equal force to false advertising claims, any such claim should be dismissed for the same reason. *Abitron*, 600 U.S. at 421-23 (addressing the non-extraterritorial application of § 1125(a)(1) generally).

Furthermore, the Complaint's conclusory allegations cannot overcome the Video itself, which in no way suggests any endorsement of the Consul products referenced. Plaintiff does not appear with any Consul products. Calazans Decl., Ex. 1 at 0:27-0:40. Instead, she is shown describing an important social issue related to energy affordability in a Video that describes how a particular program could help to address that social issue. *Id*. The Video does *not* suggest that Plaintiff endorses Consul or the specific program described in the Video and thus does not allow Plaintiff to plead a plausible claim of false endorsement. *See Champion v. Moda Operandi, Inc.*, 561 F. Supp. 3d 419, 438 (S.D.N.Y. 2021) (dismissing false endorsement claims because defendant's brand name "appears nowhere on the screens containing plaintiffs' images").

### D. Plaintiff Fails to Allege a Right-of-Publicity Claim

Plaintiff fails to state a right-of-publicity claim because she does not allege any facts indicating that her image and likeness has commercial value. As courts within the Fourth Circuit have repeatedly recognized, misappropriation of a plaintiff's image and likeness is only actionable if it "ha[s] commercial or other value." *Fundamental Admin Servs., LLC v. Anderson*, 2014 U.S. Dist. LEXIS 157871, at \*\*17-18 (D. Md. Nov. 6, 2014) (citations omitted); *Uhlig LLC v. Shirley*, 2011 U.S. Dist. LEXIS 31833, at \*\*22-23 (D.S.C. Mar. 25, 2011) (explaining that a certain "level of celebrity status [is] required to support an appropriation of personality claim"); *Curran v. Amazon.com, Inc*., 2008 U.S. Dist. LEXIS 12479, at \*\*14-15 (S.D.W.V. Feb. 19, 2008) (acknowledging right of publicity claim can be brought only by celebrities or non-celebrities who demonstrate that their "identity possessed commercial value"). Plaintiff does not allege that she has reached "celebrity" status or that her image and likeness otherwise hold commercial value. While the Complaint describes Plaintiff as a state senator and "prominent" person in energy affordability and AI policy, Compl. ¶ 2, it notably does not allege that her name, image or likeness would be recognizable or have any meaning to the Video's audience. *See Hudson v. Datanyze*

*LLC*, 2025 U.S. App. LEXIS 749, at **6-7 (6th Cir. Jan. 13, 2025) (affirming dismissal where plaintiffs did "not allege that their names and likenesses were particularly valuable or recognizable to [Defendant's] targeted customers—business recruiters, salespersons, and marketers"). Nor could she, as marketing professionals attending the Cannes Festival would almost certainly have no idea who she was. Because the Complaint offers no facts from which the Court could plausibly infer any actual commercial value in her name, image or likeness, this claim should be dismissed.

### E. Plaintiff Fails to Allege an Intentional Infliction of Emotional Distress Claim

The Complaint's recitation of the legal elements of an intentional infliction of emotional distress claim, without supporting factual allegations, should be dismissed. *Torres v. Ishee*, 2022 U.S. Dist. LEXIS 48973, at **12-13 (W.D.N.C. Mar. 17, 2022). Plaintiff must allege "(1) extreme and outrageous conduct (2) which is intended to cause and does cause (3) severe emotional distress to another." *Norton v. Scot. Mem. Hosp., Inc.*, 250 N.C. App. 392, 397 (2016). She does not come close to the "high threshold for finding that conduct meets [this] standard." *Id*. at 398.

For example, Plaintiff must allege facts demonstrating that Defendants' conduct was "beyond all possible bounds of decency, . . . atrocious, and utterly intolerable in a civilized community." *Id*. at 397 (citations omitted). Instead, without any elaboration, Plaintiff merely states that Defendants' use of her likeness in the Video was "extreme and outrageous." Compl. ¶¶ 97-98. This is insufficient. The Video's minor alterations to one sentence of Plaintiff's TED Talk in an advertising festival submission do not rise to the level of severity necessary to state a claim. *See McEntire v. Johnson*, 2013 U.S. Dist. LEXIS 151482, at *8 (W.D.N.C. Sept. 20, 2013).

Similarly, Plaintiff alleges that she "suffered severe emotional distress," Compl. ¶ 68, but she does not specify how this manifested or whether she experienced a particular "emotional or mental disorder, such as . . . psychosis, chronic depression . . . or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by

professionals." *Torres*, 2022 U.S. Dist. LEXIS 48973, at *12. Plaintiff's conclusory "[a]llegations that fail to identify a severe and disabling emotional or mental condition . . . are not sufficient." *Moschos v. Moschos*, 287 N.C. App. 162, 166 (2022); *Walton v. Villines*, 2021 U.S. Dist. LEXIS 154457, at **16-17 (W.D.N.C. July 26, 2021) ("[C]onclusory allegations of emotional distress are insufficient to withstand dismissal.").

## III. THE COMPLAINT SHOULD BE DISMISSED AS TO DEFENDANTS OMNICOM, DDB, AND WHIRLPOOL UNDER RULE 12(b)(6)

The Court should dismiss the Complaint as to Omnicom, DDB, and Whirlpool under Rule 12(b)(6) for additional reasons. As Plaintiff concedes, DM9 created and submitted the Video to Cannes, and the Video features Consul-branded products sold by a Brazilian Whirlpool subsidiary. Compl. ¶¶ 7, 35; Quinn Decl. ¶¶ 12-17. Plaintiff fails to allege any facts to justify piercing the corporate veil to hold Omnicom, DDB, and Whirlpool responsible for the alleged misconduct of DM9 or Whirlpool Do Brasil. In addition, Plaintiff fails to adequately allege that Omnicom, DDB, or Whirlpool were directly responsible for any alleged misconduct sufficient to support her claims.

### A. Plaintiff Has Not Alleged Facts Sufficient to Pierce the Corporate Veil

The Court may not hold a parent company liable for the misconduct of its subsidiary unless "(1) the parent corporation has complete domination over the policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own, (2) the parent used this control to commit a wrong in contravention of plaintiff's legal rights, and (3) the wrong proximately caused plaintiff's injury or loss." *Murphy v. Allstate Corp.*, 2011 U.S. Dist. LEXIS 109613, at **13-14 (M.D.N.C. Sept. 27, 2011) (citation omitted). None of these elements is alleged here.

Instead, Plaintiff exclusively relies on barebones allegations that Omnicom, DDB, and Whirlpool "controlled" or "approved" the Video. Compl. ¶¶ 13-14, 16, 43. But these conclusory

allegations are insufficient not only because they lack any factual support, but also because "mere ratification would fall short of the 'complete domination' required" to hold a parent liable for the actions of its subsidiaries. *Murphy*, 2011 U.S. Dist. LEXIS 109613, at *15.

### B. Plaintiff Has Not Alleged Direct Misconduct by Omnicom, DDB, or Whirlpool

Nor has Plaintiff sufficiently alleged any direct violation by Omnicom, DDB, or Whirlpool. Sparse and conclusory allegations "upon information and belief" that they were involved in creating the Video are insufficient. Compl. ¶¶ 16, 38; *Demastes v. Midwest Diversified Mgmt. Corp.*, 2020 U.S. Dist. LEXIS 50606, at **7-8 (W.D.N.C. Mar. 24, 2020). The allegations primarily refer to "Defendants" collectively, failing to give proper notice of "which of those [d]efendants' specific acts . . . purportedly comprise the unlawful conduct" under Rule 8. *Bryant v. Core X Restoration, LLC*, 2021 U.S. Dist. LEXIS 62891, at **27-30 (W.D.N.C. Nov. 12, 2021).

Even if Plaintiff's allegations that Omnicom, DDB, and Whirlpool "approved" or "assisted" with the creation of the Video were sufficient from a Rule 8 "group pleading" perspective, the Complaint would still fail to plead any actionable claims against any of the U.S.-based Defendants. Each of Plaintiff's claims require some "use" of the Video for a commercial purpose or "publication" of the Video. *See, e.g., Nobriga v. La Kumbala Loung & Rest., Inc.*, 2024 U.S. Dist. LEXIS 103864, at **16-17 (E.D.N.C. May 23, 2024) (right-of-publicity claim requires defendant's unauthorized "use" of plaintiff's likeness "in connection with an advertisement or commercial enterprise"); *Jackson*, 2008 U.S. Dist. LEXIS 104410, at **12-13 (defamation claim requires statements "published to a third person"). But the Complaint does not allege any such use or publication by Omnicom, DDB, or Whirlpool.

The only allegation that arguably supports either of these requirements is the conclusory statement that "Defendants" collectively "made the decision to submit the Campaign to the Cannes . . . Festival." Compl. ¶ 44. But Plaintiff immediately contradicts that allegation in the following

paragraph by acknowledging that only "Consul" and DM9 are on the Cannes Festival submission list. *Id.* ¶ 45. Specific allegations that DM9 and Consul submitted the Video to the Cannes Festival override conclusory allegations that all Defendants did so. *See Munoz*, 2016 U.S. Dist. LEXIS 72683, at *21. In sum, because the Complaint lacks specific allegations that Omnicom, DDB, and Whirlpool directly engaged in any alleged misconduct, Plaintiff's claims against them should be dismissed. *See Ricketts v. Wake Cnty. Pub. Sch. Sys.*, 2022 U.S. Dist. LEXIS 462, at *33 (E.D.N.C. Jan. 3, 2022) (dismissing claims against defendant based on alleged oversight where "the complaint does not allow a reasonable inference" that this violated plaintiff's rights).

## CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint in its entirety under Rule 12(b)(2) for lack of personal jurisdiction, and/or under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated: November 7, 2025

Respectfully submitted,

_s/ Guy Cohen_
Guy Cohen (admitted *pro hac vice*)
Jacklyn M. Siegel (admitted *pro hac vice*)
Charlotte McCary (admitted *pro hac vice*)
**DAVIS & GILBERT LLP**
1675 Broadway
New York, NY 10019
(212) 468-4800
gcohen@dglaw.com
jsiegel@dglaw.com
cmccary@dglaw.com

_s/ Kyle R. Hair_
Kyle R. Hair
**ALSTON & BIRD LLP**
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
(704) 444-1167
Kyle.Hair@alston.com

*Attorneys for Defendants Omnicom Group Inc., Whirlpool Corporation, DDB Worldwide Communications Group LLC, DM9 Comunicacao Ltda, Whirlpool Do Brasil Ltda*

## ARTIFICIAL INTELLIGENCE (AI) CERTIFICATION

I hereby certify the following:

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

Every statement and every citation to an authority contained in this document has been checked by an attorney and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated:  November 7, 2025

*s/  Kyle R. Hair*_____
Kyle R. Hair

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint was filed electronically. Notice of this filing will be sent by email to counsel for Plaintiff by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/ Kyle R. Hair*_____
Kyle R. Hair
