UNITED STATES DISTRICT COURT WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| DEANDREA SALVADOR<br><br>*Plaintiff,*<br><br>v.<br><br>OMNICOM GROUP, INC., et als.<br><br>*Defendants.* | Case No. 3:25-cv-628<br><br>**CROSS-MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND FOR LIMITED JURISDICTIONAL DISCOVERY** |

Plaintiff, North Carolina State Senator DeAndrea Salvador ("Plaintiff"), by and through undersigned counsel, respectfully moves this Court to grant leave for Plaintiff to file an amended complaint and to take limited early jurisdictional discovery on the issues raised Defendants' Motion to Dismiss the Complaint, Docket Entry 19, "et. Seq." Specifically, Plaintiff requests a one-hundred twenty (120) day discovery period to: (i) serve up to six (6) interrogatories and ten (10) requests for production on each Defendant; (ii) serve up to six (6) interrogatories and ten (10) requests for production, including by way of subpoena if a non-party is identified as a likely alternative Defendant as appears appropriate based on the foregoing discovery, including but not limited to WHIRLPOOL SA; (iii) serve up to six (6) interrogatories and ten (10) requests for production, including by way of subpoena on non-party Cannes Lions International Festival of Creativity ("Cannes Lions"); (iv) take up to four depositions (including two Rule (30(b)(6) depositions), all limited to the issues raised in the Defendants' Motion to Dismiss the Complaint; and (v) ordering all parties to cooperate implementing the foregoing to the extent subsidiary or affiliate entities are necessary sources of information or documents.

## PRELIMINARY STATEMENT

This matter involves Plaintiff being "deepfaked [1]" in an advertisement (the "Advertisement") created, directly or indirectly, by two of the world's largest corporations, Whirlpool[2] and Omnicom[3]. As described by the New York Times Hard Fork[4], in summation:

> This one comes to us from North Carolina, where a state Senator named DeAndrea Salvador recently found herself in an ad by the Whirlpool company for a line of appliances in Brazil that she had not actually appeared in. The company had lifted a section from a Ted Talk video that she gave back in 2018 and put it into their video about Sao Paulo, and all the energy efficiencies that were in their appliances in Brazil.

More specifically, without requesting, nor receiving, any authorization from Plaintiff (a North Carolina State Senator and expert in energy efficiency and AI legislation), Defendants intentionally used and manipulated Plaintiff's persona, turning a State Senator into a "pitch person" for Whirlpool, literally putting unsupported and unresearched claims and representations "in her mouth." After creating the video, Defendants entered and displayed the Advertisement at the world's largest global advertising festival, Cannes Lions International Festival of Creativity ("Cannes Lions"), in June 2025. At Cannes Lions, the Advertisement won "Grand Prix" award for its category, leading to even greater dissemination and extensive media coverage. Foreseeably, when the Defendants' AI "fakery" was unmasked and it was discovered that a North Carolina Senator's speech and persona had been manipulated, more extensive media coverage occurred, most recently in the Washington Post[5] and MSN[6]. Despite the revelation that Advertisement was

---

[1]'Deep fake' means an audiovisual record created or altered in a manner that the record would falsely appear to a reasonable observer to be an authentic record of the actual speech or conduct of an individual S.3805, 115th Congress
[2] https://fortune.com/company/whirlpool/
[3] https://fortune.com/company/omnicom-group/
[4] https://www.nytimes.com/2025/12/05/podcasts/hardfork-openai-code-red.html
[5] https://www.washingtonpost.com/nation/2025/11/30/deep-fake-whirlool-brazil/
[6] https://www.msn.com/en-us/news/technology/lawmaker-suing-whirlpool-after-ad-used-deepfake/ar-AA1RyaeR

"deepfaked," the Advertisement remains publicly viewable to this day https://www.instagram.com/reels/DLF3rvzIZxJ/.

The Advertisement, its global dissemination, and the media coverage caused by both winning at Cannes Lions and being discovered to be a fake, have foreseeably led to scrutiny and damage to Plaintiff's reputation, embarrassing her and bringing her integrity into question. In that context, Plaintiff has sufficiently pled ample facts to establish personal jurisdiction over each Defendant and to sustain its claims in the face of a Motion to Dismiss pursuant to Federal Rule of Civil Procedure §§12(b)(2) and 12(b)(6).

Contrary to the picture painted by the Defendants, and only by way of example, Whirlpool was actively involved in the production of the "deepfake" at issue, (including, as Plaintiff alleges, by supplying Plaintiff's seminar to its advertising vendors and "straw man," DM9) and is plainly "at home" in North Carolina. Although personal jurisdiction over the South America Defendants may present closer questions, no such issue exists with respect to Whirlpool. Whirlpool's conduct gives rise to Plaintiff's claims, and Whirlpool engages in substantial business in North Carolina.

Consistent with a long line of "right of publicity" matters, courts have routinely exercised jurisdiction over foreign defendants who intentionally target a plaintiff, engage in meaningful conduct directed at a person or intellectual property rights, and foresee, or reasonably should foresee, the harm such conduct will cause. State and federal courts have repeatedly held that purposeful conduct satisfies the minimum-contacts necessary to exercise jurisdiction, particularly where state interest is high and no viable alternative forum exists.

<u>**STATEMENT OF FACTS**</u>

Plaintiff incorporates by reference the Statement of Facts set forth in Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, filed concurrently herewith.

<u>**ARGUMENT**</u>

<u>AMENDED COMPLAINT</u>

Federal Rule of Civil Procedure 15 applies to the amendment of pleadings and allows a party to amend once as a matter of course within 21 days after serving, or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed.R.Civ.P. 15(a)(1). Rule 15 further provides:

> **(2) Other Amendments**. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires. Fed.R.Civ.P. 15(a)(2).

Under Rule 15, a "motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile." *Nourison Rug Corporation v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (*citing HCMF Corp. v. Allen*, 238 F.3d 273, 276-77 (4th Cir. 2001)); *see also, Foman v. Davis*, 371 U.S. 178, 182 (1962). However, "the grant or denial of an opportunity to amend is within the discretion of the District Court." *Pittston Co. v. U.S.*, 199 F.3d 694, 705 (4th Cir. 1999) (*quoting Foman*, 371 U.S. at 182).

Leave to amend should be granted here because Plaintiff seeks only to correct the caption, properly identify the parties, and clarify the factual allegations and causes of action in response to issues raised in Defendants' Motion to Dismiss. Such amendments are precisely the type Rule 15 is intended to permit, particularly at this early stage of the litigation. There is no showing of bad

faith, undue delay, or prejudice to Defendants, who have already been placed on notice of the conduct at issue and the entities involved. Nor would amendment be futile, as the proposed amendments do not introduce new theories of liability but instead refine and clarify existing claims to ensure they are accurately pleaded. Allowing amendment will promote judicial efficiency by narrowing disputes, curing any technical pleading deficiencies, and ensuring that this matter is resolved on its merits rather than on curable procedural issues. Plaintiff's proposed Amended Complaint, with redline reflecting changes from the originally filed pleading, is attached hereto as **Exhibit "A**." Accordingly, justice requires that Plaintiff be granted leave to amend the Complaint.

<u>JURISDICTIONAL DISCOVERY</u>

Through their "intertangled" Motion to Dismiss , the Defendants seek an order dismissing this action for lack of personal jurisdiction over all Defendants pursuant to, *inter alia*, Rule 12(b)(2) of the Federal Rules of Civil Procedure. As the primary basis for their jurisdictional arguments, the Defendants argue that they are not subject to personal jurisdiction in North Carolina because the Defendants do not have any contacts with North Carolina to give rise to jurisdiction over them. Plaintiff respectfully submits that it should be entitled to explore these factual matters with the Defendants through limited early discovery based on the adequacy of Plaintiff's allegations. For example, Whirlpool, clearly a primary participant in the creation of the Advertisement does extensive business in North Carolina, and that business is the sale of appliance, the very subject of the Advertisement. Similarly, the "advertising" defendants, all owned and controlled by Omnicom, clearly the admitted creators of the Advertisement, do extensive business in North Carolina, and that business is the sale of advertising and marketing services, the Advertisement by way of example – that is their business. The only entity that may possibly not do extensive business in North Carolina, the wholly owned and controlled Brazilian

ad agency populated with prior employees of the Omnicom defendants – including but not limited to Icaro Doria.

District courts have broad discretion to allow discovery concerning jurisdiction pursuant to Rule 26 of the Federal Rules of Civil Procedure. *See Mylan Labs., Inc. v. Akzo*, 2 F.3d 56, 64 (4th Cir. 2003)) and *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 195 (4th Cir. 2003) ("A district court has wide latitude in controlling discovery and … its rulings will not be overturned absent a showing of clear abuse of discretion.") (internal quotations and citation omitted). "[T]he decision of whether or not to permit jurisdictional discovery is a matter committed to the sound discretion of the district court." *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 (4th Cir. 2002)) (granting motion for leave to take jurisdictional discovery and extension of time to respond to Motion to Dismiss).

Where the issue of personal jurisdiction is disputed, the Court may order discovery directed at jurisdictional issues. *Rich v. KIS Cal., Inc*., 121 F.R.D. 254, 259 (M.D.N.C. 1988) ("When plaintiff can show that discovery is necessary in order to meet defendant's challenge to personal jurisdiction, a court should ordinarily permit discovery on that issue unless plaintiff's claim appears to be clearly frivolous.") (citations omitted); *see also Compagnie des Bauxites de Guinee v. L'Union,* 723 F.2d 357 (3d Cir.1983) and *Enterprise Intern. v. Corporacion Estatal Petrolera,* 762 F.2d 464, 475 (5th Cir. 1985). Furthermore, "numerous district courts within the Fourth Circuit have permitted jurisdictional discovery where disputes exist in the record or where further exploration of jurisdictional facts is warranted." *T & S Brass & Bronze Works, Inc. v. Greenfield World Trade, Inc.,* 2009 WL 10678290 at \*1 (D.S.C. Mar. 12, 2009); *see also e.g.*, *Tuttle Dozer Works, Inc. v. Gyro-Trac, Inc*., 463 F. Supp. 2d 544, 548 (D.S.C. 2006) (permitting discovery into personal jurisdiction issue); *Burns & Russell Co. v. Oldcastle, Inc.*, 166 F. Supp.

2d 432, 442 (D. Md. 2001) (granting request for jurisdictional discovery to explore jurisdictional facts); *Coastal Video Communications, Corp. v. Staywell Corp.*, 59 F. Supp. 2d 562, 572 (E.D. Va. 1999) (allowing jurisdictional discovery due to gaps in record regarding business contacts and Internet-based contacts).

Here, Plaintiff has filed valid claims and has shown a proper basis for this Court's exercise of personal jurisdiction. Plaintiff alleges that Defendants have minimum contacts with North Carolina and/or exercise control over the actions of their respective subsidiaries such that all Defendants have purposefully availed themselves of jurisdiction in North Carolina through their collective conduct. Specifically, Defendants Whirlpool, DDB and Omnicon all exercised control over. and "signed off" on, the Advertisement created by DDB and DM9, ultimately authorizing its submission in Cannes Lions with knowledge that it utilized an AI manipulated version of a North Carolina State Senator.

At Cannes Lions and in its immediate aftermath, the Advertisement gained global notoriety, prompting a journalist in Brazil to contact Plaintiff in North Carolina ***only a single day after the Advertisement aired.*** Setting aside how the journalist knew it was Plaintiff, that recognition was no accident. Defendants' deliberately sought to capitalize on Plaintiff's high-profile public position in North Carolina and professional expertise by explicitly and prominently exploitation of her likeness and manipulated speech. In doing so, Defendants "piggybacked" on the notoriety inherent in Plaintiff's status as a North Carolina State Senator, while simultaneously misappropriating and distorting the authority and trust associated with that office, thereby causing an injury felt uniquely and most acutely within North Carolina.

Plaintiff has adequately demonstrated a considerable dispute as to Defendants' intentional choice and targeting Plaintiff, a North Carolina State Senator's, their deliberate manipulation of

her speech, and the substantiality of the harms caused within North Carolina. Moreover, Defendants Whirlpool, DDB and Omnicon, each alleged to be the controllers and/or parent companies (*Docs*. 26-30), are very likely have sufficient relevant forum-related contacts with North Carolina to support this Court's jurisdiction over them.  Where, as here, parent companies are alleged to have exercised control over and approved the very conduct giving rise to Plaintiff's claims, limited jurisdictional discovery is appropriate to determine whether the contacts of Whirlpool, DDB, and Omnicom should be imputed to their subsidiaries, and vice versa. Accordingly, the disputed jurisdictional facts and allegations warrant further exploration in order for the Court to make an informed decision on the basis of jurisdiction and Plaintiff's motion for jurisdictional discovery should be granted.

Plaintiff requests leave to file an amended complaint and a one-hundred twenty (120) day discovery period to: (i) serve up to six (6) interrogatories and ten (10) requests for production on each Defendant; (ii) serve up to six (6) interrogatories and ten (10) requests for production, including by way of subpoena if a non-party is identified as a likely alternative Defendant as appears appropriate based on the foregoing discovery, including but not limited to WHIRLPOOL SA; (iii) serve up to six (6) interrogatories and ten (10) requests for production, including by way of subpoena on non-party Cannes Lions International Festival of Creativity ("Cannes Lions"); and (iv) take up to four depositions (including two Rule (30(b)(6) depositions), all limited to the issues raised in the Defendants' Motion to Dismiss the Complaint; and (v) ordering all parties to cooperate implementing the foregoing to the extent subsidiary or affiliate entities are necessary sources of information or documents

**CONCLUSION**

For the foregoing reasons, Plaintiff requests leave to amend the complaint and take limited early jurisdictional discovery from the Defendants.

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Civil Rule 7.1(b), the undersigned hereby certifies that counsel for Plaintiff has conferred with counsel for the Defendants regarding Plaintiff's request for leave to amend the complaint and take limited early jurisdictional discovery from the Defendants and attempted in good faith to resolve areas of disagreement.

THIS the 19th day of December, 2025

**THE MCHATTIE LAW FIRM, LLC**
/s/ Christopher J. McHattie
Christopher J. McHattie, Esq. (Bar No. 035251987) Michael V. Gattoni, Esq.
(Bar No. 238152018)
550 West Main Street
Boonton, New Jersey 07005
Telephone:  973-402-5505
Facsimile:  973-400-4110
*Attorneys for Plaintiff (Pro Hac Vice)*

**TLG LAW**
/s/ Alec S. Jalovec
Alec S. Jalovec (NC Bar #50793)
David G. Redding (NC Bar #24476)
2907 Providence Road, Suite 303
Charlotte, North Carolina 28211  Tel. & Fax: 704-900-2215  ajalovec@tlg-law.com
dredding@tlg-law.com
*Attorneys for Plaintiff*

# ARTIFICIAL INTELLIGENCE (AI) CERTIFICATION

I hereby certify the following:

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and Every statement and every citation to an authority contained in this document has been checked by an attorney and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: December 19, 2025

/s/ Alec S. Jalovec
Alec S. Jalovec

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically. Notice of this filing will be sent by email to all counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Alec S. Jalovec
Alec S. Jalovec
