# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

DEANDREA SALVADOR,

    Plaintiff,

    v.

OMNICOM GROUP INC., et al,

    Defendants.

Case No. 3:25-cv-00628

## OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND FOR LIMITED JURISDICTIONAL DISCOVERY

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..........................................................................................................................3

    I.   PLAINTIFF'S REQUEST FOR JURISDICTIONAL DISCOVERY  SHOULD BE DENIED ...................................................................................................3

    II.  PLAINTIFF'S PROPOSED AMENDMENTS ARE FUTILE AND SHOULD BE DENIED ...............................................................................................................9

CONCLUSION .....................................................................................................................16

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
    600 U.S. 412 (2023) ...................................................................................................................12

*Adams v. Jenkins*,
    2016 U.S. Dist. LEXIS 184705 (W.D.N.C. Sept. 29, 2016) .....................................................12

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*,
    293 F.3d 707 (4th Cir. 2002) ......................................................................................................5

*Bagwell v. Dimon*,
    2015 U.S. Dist. LEXIS 64483 (M.D.N.C. May 18, 2015) .......................................................16

*Base Metal Trading, Ltd. v. Ojsc Novokuznetsky Aluminum Factory*,
    283 F.3d 208 (4th Cir. 2002) ..................................................................................................3, 8

*BeoCare Grp, Inc. v. Morrissey*,
    124 F. Supp. 3d 696 (W.D.N.C. 2015) .......................................................................................4

*Boyce & Isley v. Cooper*,
    153 N.C. App. 25 (2002) ...........................................................................................................10

*Brown v. Advanced Dig. Sols., LLC*,
    2017 U.S. Dist. LEXIS 142092 (W.D.N.C. Aug. 31, 2017) ..................................................6, 8

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs. Inc.*,
    334 F.3d 390 (4th Cir. 2003) ......................................................................................................4

*Carrington v. Carolina Day Sch., Inc.*,
    837 S.E.2d 383 (N.C. App. 2020) .............................................................................................15

*Champion v. Moda Operandi, Inc.*,
    561 F. Supp. 3d 419 (S.D.N.Y. 2021) ................................................................................12, 13

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) .................................................................................................................7, 8

*Dobson v. Charlotte School of Law*,
    2017 U.S. Dist. LEXIS 117841 (W.D.N.C. July 27, 2017) .....................................................16

*Ferraro v. Rodgers*,
    2025 U.S. Dist. LEXIS 84479 (E.D.N.C. May 2, 2025) ...........................................................9

*Freud Am., Inc. v. Milwaukee Elec. Tool Corp.*,
   2020 U.S. Dist. LEXIS 248655 (M.D.N.C. June 17, 2020) ........................................................8

*Fundamental Admin Servs., LLC v. Anderson*,
   2014 U.S. Dist. LEXIS 157871 (D. Md. Nov. 6, 2014) ..........................................................14

*Hudson v. Datanyze LLC*,
   2025 U.S. App. LEXIS 749 (6th Cir. Jan. 13, 2025)..............................................................14

*Julian v. Bank of Am., N.A.*,
   2017 U.S. Dist. LEXIS 151368 (W.D.N.C. Sept. 8, 2017) .......................................................9

*Krausz Indus. v. Smith-Blair, Inc.*,
   188 F. Supp. 3d 545 (E.D.N.C. 2016) ....................................................................................5

*Legacy Data Access, LLC v. MediQuant, Inc.*,
   2016 U.S. Dist. LEXIS 19109 (W.D.N.C. Feb. 17, 2016) ........................................................6

*LegalForce RAPC Worldwide, P.C. v. LegalForce, Inc.*,
   124 F.4th 1122 (9th Cir. 2024)..............................................................................................12

*LifeWise Family Fin. Sec. v. Holden*,
   988 F.3d 743 (4th Cir. 2021) ................................................................................................10

*Norton v. Scot. Mem. Hosp., Inc.*,
   250 N.C. App. 392 (2016) ....................................................................................................14

*Premier Research Int'l, LLC v. Medpace, Inc.*,
   2020 U.S. Dist. LEXIS 179669 (M.D.N.C. Sept. 30, 2020) .....................................................4

*Prince v. Wright*,
   141 N.C. App. 262 (2000) ....................................................................................................12

*Regent Lighting Corp. v. American Lighting Concept*,
   25 F. Supp. 2d 705 (M.D.N.C. 1997) .....................................................................................7

*Reynolds v. United States*,
   2023 U.S. Dist. LEXIS 161945 (E.D.N.C. July 21, 2023).......................................................8

*Sullivan v. City of Frederick*,
   738 Fed. Appx. 198 (4th Cir. 2018) .......................................................................................9

*Szulik v. TAG V.I., Inc.*,
   783 F. Supp. 2d 792 (E.D.N.C. 2011) ....................................................................................4

*The 'In' Porters, S.A. v. Hanes Printables, Inc.*,
   663 F. Supp. 494 (M.D.N.C. 1987) ......................................................................................11

*Torres v. Ishee*,
 2022 U.S. Dist. LEXIS 48973 (W.D.N.C. Mar. 17, 2022)..................................................14, 15

*Uhlig LLC v. Shirley*,
 2011 U.S. Dist. LEXIS 31833 (D.S.C. Mar. 25, 2011) ...........................................................14

*Van Duyn v. Innovative Mill Wright Servs., Inc.*,
 2014 U.S. Dist. LEXIS 119599 (W.D.N.C. Mar. 19, 2014).......................................................8

*Vient v. Sanford Herald*,
 2020 U.S. Dist. LEXIS 141140 (M.D.N.C. Aug. 7, 2020) .......................................................9

*Walton v. Villines*,
 2021 U.S. Dist. LEXIS 154457 (W.D.N.C. July 26, 2021) ....................................................15

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
 525 F.3d 370 (4th Cir. 2008) ....................................................................................................9

*Woods Int'l, Inc. v. McRoy*,
 436 F. Supp. 2d 744 (M.D.N.C. 2006) ......................................................................................7

**Statutes**

Lanham Act ......................................................................................................................................12

N.C. Gen. Stat. § 75-1.1 ..................................................................................................................11

**Rules**

Fed. R. Civ. P. 8 ..............................................................................................................................16

Fed. R. Civ. P. 12(b)(6) ...............................................................................................................3, 10

## PRELIMINARY STATEMENT

While opposing Defendants' Motion to Dismiss (the "Opposition"),[1] which laid bare Plaintiff's failure to establish personal jurisdiction over any of the Defendants or to state any viable claim, Plaintiff filed the instant cross-motion seeking leave to take jurisdictional discovery and amend the Complaint (the "Cross-Motion"). This desperate attempt to save fatally flawed claims over which this Court does not, and will not, have jurisdiction, should be denied.

As explained in the Motion to Dismiss, Plaintiff's Complaint should be dismissed in its entirety. This Court lacks personal jurisdiction over all the Defendants because the Video at issue has nothing to do with North Carolina. It was created by DM9, a *Brazilian* ad agency that provides services to its *Brazilian* clients, features a *Brazilian* brand of products sold nowhere in the United States, discusses a hypothetical program targeting energy affordability for low-income *Brazilian* consumers, and was submitted by DM9 to the Cannes Festival in *France*, where it initially won an award. Thereafter, as shown by the dozens of posts and articles *Plaintiff* submitted in her Opposition to the Motion to Dismiss: (i) international and U.S. news organizations reported on and posted the various award-winning Cannes submissions, including the Video; (ii) DDB and Omnicom congratulated the subsidiaries across their worldwide networks that won awards; and (iii) shortly after DM9's award was rescinded because of AI issues, and again after Plaintiff commenced this lawsuit, news organizations reported on the AI controversy.

Defendants did not "target" North Carolina and the material facts demonstrating the absence of specific jurisdiction are known and undisputed. But Plaintiff nevertheless seeks burdensome jurisdictional discovery consisting of up to 42 interrogatories, 70 document requests,

---

[1] Capitalized terms that are not defined in this brief shall have the same definitions ascribed to them in the Motion to Dismiss and Defendants' Reply filed concurrently herewith (the "Reply").

and multiple depositions that Plaintiff misleadingly characterizes as "limited." The request for jurisdictional discovery should be denied. Jurisdictional discovery is not a right; rather, Plaintiff must make a *prima facie* showing that personal jurisdiction over Defendants exists, and she has failed to do so. Plaintiff does not and cannot identify a single factual dispute, or a single missing fact, pertaining to *specific* jurisdiction that she seeks to clarify or uncover through discovery. Indeed, Plaintiff effectively concedes that this Court lacks personal jurisdiction over the Brazilian entities that submitted the Video or whose products appear in it.

Instead, Plaintiff seeks broad discovery from the U.S. Parent Companies because, she alleges, DDB, Omnicom, and Whirlpool "very likely have sufficient relevant forum-related contacts with North Carolina to support this Court's jurisdiction over them." (Cross-Mot. at 8). Plaintiff contends that where "parent companies are alleged to have exercised control over and approved the very conduct giving rise to Plaintiff's claims, limited jurisdictional discovery is appropriate to determine whether the contacts of Whirlpool, DDB, and Omnicom should be imputed to their subsidiaries . . .". (*Id.*). Plaintiff appears to suggest that the U.S. Parent Companies' North Carolina business activities should subject them to *general* jurisdiction in this Court.

But discovery regarding the U.S. Parent Companies' North Carolina contacts is *irrelevant* because, even if they have significant sales or perform significant services in North Carolina, they are not "at home" in the state as a matter of law, and therefore not subject to general jurisdiction. Moreover, the in-state contacts Plaintiff wishes to discover have no relationship to the Video or suit and thus cannot give rise to specific jurisdiction. And even if they were at home in North Carolina, there is no basis to impute their contacts to the Brazilian subsidiaries based on unsupported and factually contradicted speculation that they "controlled" or "approved" the

2

conduct of the foreign subsidiaries. Plaintiff's request for jurisdictional discovery is a burdensome and futile fishing expedition, and it should be denied.

Plaintiff's request to amend the Complaint should also be denied because the Proposed Amended Complaint fails to remedy the many deficiencies in her Complaint. As an initial matter, the Proposed Amended Complaint fails to address the fact that this Court lacks personal jurisdiction over Defendants. For this reason alone, any amendment to Plaintiff's substantive claims would be futile. Furthermore, and as discussed below, the Proposed Amended Complaint also fails to allege additional facts sufficient to avoid dismissal under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

## **ARGUMENT**

### I. **PLAINTIFF'S REQUEST FOR JURISDICTIONAL DISCOVERY SHOULD BE DENIED**

On its face, Plaintiff's request for jurisdictional discovery is an improper fishing expedition and desperate attempt to salvage claims against multiple defendants over which this Court lacks jurisdiction. As set forth in detail in the Motion to Dismiss, neither the Complaint nor the Opposition present any basis to subject any of the Defendants to personal jurisdiction. (Mot. at 7-15; Reply at 1-8). Nonetheless, Plaintiff claims that she "should be entitled to explore the[] factual matters" described in Defendants' Motion to Dismiss by engaging in extensive jurisdictional discovery. (Cross-Mot. at 5). Plaintiff is wrong. Having utterly failed to plead jurisdiction, rebut Defendants' Motion to Dismiss and accompanying Declarations, or identify any unsettled factual issue that could possibly establish jurisdiction, Plaintiff's request for unfettered jurisdictional discovery should be denied.

Courts have discretion to determine "whether or not to permit jurisdictional discovery." *Base Metal Trading, Ltd. v. Ojsc Novokuznetsky Aluminum Factory*, 283 F.3d 208, 216 n.3 (4th

Cir. 2002). Plaintiff erroneously suggests that such discovery is appropriate whenever "the issue of personal jurisdiction is disputed." (Cross-Mot. at 6). That is not the case. Indeed, to obtain jurisdictional discovery, the plaintiff must first "establish a *prima facie* case for personal jurisdiction both on the face of [its] Complaint and also in the instant motion," otherwise the Court should exercise its discretion to deny the plaintiff's request for jurisdictional discovery. *Szulik v. TAG V.I., Inc.*, 783 F. Supp. 2d 792, 795 (E.D.N.C. 2011). "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *BeoCare Grp, Inc. v. Morrissey*, 124 F. Supp. 3d 696, 711 (W.D.N.C. 2015) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 402 (4th Cir. 2003)). Further, "when the plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition." *Premier Research Int'l, LLC v. Medpace, Inc.*, 2020 U.S. Dist. LEXIS 179669, at *29 (M.D.N.C. Sept. 30, 2020) (citations omitted).

That is precisely the case here. Plaintiff does not, and cannot, make a *prima facie* showing of personal jurisdiction in the Complaint, her Opposition, or in this Cross-Motion. Plaintiff mainly hangs her jurisdictional hat on the purported "intentional choice and targeting [of] Plaintiff" by Defendants and the related harm caused to Plaintiff in North Carolina. (Cross-Mot. at 7-8). But the law is well settled that a plaintiff's in-state injury is insufficient to confer specific jurisdiction on out-of-state defendants, even in defamation and right-of-publicity cases; and in any event, the Video itself belies any suggestion that Plaintiff was singled out for her status as a North Carolina state senator. (Reply at 2-3). With respect to the Brazilian Defendants that Plaintiff alleges created

4

and submitted the Video, Plaintiff concedes that no other purported contacts with North Carolina exist, and argues instead that contacts of the U.S. Parent Companies should be imputed to their Brazilian subsidiaries based on their "control" and "approv[al]" of the conduct at issue. (Cross-Mot. at 5-6, 8). But Plaintiff has not even tried to allege any facts that would allow the Court to pierce the corporate veil between the U.S. Parent Companies and their Brazilian subsidiaries; undefined "control" and "approval" are insufficient under the law. *Krausz Indus. v. Smith-Blair, Inc.*, 188 F. Supp. 3d 545, 557 (E.D.N.C. 2016) (denying jurisdictional discovery where "plaintiff has made no factual allegations supporting the core requirements and factors pertinent to application of the alter ego theory of personal jurisdiction").

Nor can she overcome Defendants' undisputed testimony that the U.S. Parent Companies were not involved in the creation of the Video or its submission to the Cannes Festival and lack of relevant contacts with North Carolina. (Quinn Decl. ¶ 22; Walker Decl. ¶ 5; Cohen Decl. ¶ 10; Calazans Decl. ¶ 17). Plaintiff does not (and cannot) produce sworn testimony or any other evidence contradicting Defendants' Declarations. Plaintiff does not even mention Defendants' Declarations in her Cross-Motion, let alone "suggest[] that the jurisdictional facts asserted by [Defendants] in [their] affidavits are inaccurate." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 716 n.3 (4th Cir. 2002) (denying jurisdictional discovery request). In fact, the many articles submitted with her Opposition about the Video are in accord, focusing on the involvement of DM9 and Consul. (Gattoni Decl., Exs. P, R-S). And even if the U.S. Parent Companies were involved, the North Carolina contacts cited by Plaintiff—Whirlpool's sales of other appliances and Omnicom's and DDB's advertising services—would still be insufficient as a matter of law. (Reply at 5-6).

5

Plaintiff does not identify any facts that, if discovered, could possibly overcome these fundamental jurisdictional deficiencies. In seeking jurisdictional discovery, the plaintiff "must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant . . . ." *Brown v. Advanced Dig. Sols., LLC*, 2017 U.S. Dist. LEXIS 142092, at **6-7 (W.D.N.C. Aug. 31, 2017) (citations omitted). In that regard, there must be "some factual dispute [that] directly implicates the Court's ability—or inability—to exercise personal jurisdiction over the parties," for courts to permit jurisdictional discovery. *Legacy Data Access, LLC v. MediQuant, Inc.*, 2016 U.S. Dist. LEXIS 19109, at *3 (W.D.N.C. Feb. 17, 2016).

No such factual dispute exists here, and Plaintiff has identified none.

Plaintiff claims generally that there is "a considerable dispute" as to various facts purportedly creating jurisdiction. (Cross-Mot. at 7). But because none of those facts could possibly create jurisdiction, even if true, there is no basis upon which to grant discovery. Again, Plaintiff claims that there is a dispute as to the "targeting" of Plaintiff and the in-state harm she suffered. (*Id.* at 7). But the law is clear that jurisdiction is not established where, as here, the location of injury is the only connection to the forum. (Reply at 2-3). Plaintiff does not, and cannot, identify any facts on this issue that would change that result.

Indeed, the ***only*** specific facts that Plaintiff suggests should be "explore[d]" relate to the U.S. Parent Companies: Whirlpool's in-state appliance sales and Omnicom and DDB's in-state "advertising and marketing services." (Cross-Mot. at 5). But neither of these issues has any bearing on personal jurisdiction, so they are not the proper subject of jurisdictional discovery.

With respect to Whirlpool, Plaintiff does not even try to overcome the fact that the Video exclusively features Consul-branded products, which are marketed and sold by Whirlpool's indirect Brazilian subsidiary, Whirlpool S.A., primarily in Latin America and nowhere in the

6

United States. (Quinn Decl. ¶¶ 17-18). Whirlpool does not manufacture, market, or sell **any** Consul-branded products **anywhere** in the world, let alone in the United States or North Carolina. (*Id*. ¶ 16). Whirlpool's in-state appliance sales therefore necessarily concern products that are not featured in, or in any way related to, the Video and this case. Sales of such products in North Carolina are therefore entirely unrelated to this suit and cannot serve as a basis for specific jurisdiction. *See Regent Lighting Corp. v. American Lighting Concept*, 25 F. Supp. 2d 705, 711-12 (M.D.N.C. 1997) (no specific jurisdiction where defendant did not regularly sell the product at issue in North Carolina and "[t]he only products manufactured by [d]efendants which did enter North Carolina are entirely unrelated to the present suit"); *Woods Int'l, Inc. v. McRoy*, 436 F. Supp. 2d 744, 751 (M.D.N.C. 2006) (no specific jurisdiction where "claims in the present case d[id] not 'arise out of'" defendant's prior shipment of products into state); (Reply at 6). Nor can in-state sales give rise to general jurisdiction, which would require Whirlpool to be incorporated or headquartered in North Carolina. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Accordingly, discovery as to in-state sales of non-Consul-branded Whirlpool products will have no impact on whether Whirlpool is subject to personal jurisdiction in this Court.

Omnicom and DDB's purported in-state "advertising and marketing services" similarly have no connection to this suit and therefore no bearing on specific jurisdiction. The Video was created by DM9, a Brazilian entity, and features a hypothetical energy affordability program for Whirlpool S.A., its Brazilian client. (Calazans Decl. ¶¶ 3, 8, 15). DM9 submitted the Video to the Cannes Festival to bolster its own creative reputation and enhance its ability to recruit Portuguese-speaking talent in Brazil. (*Id*. ¶ 12). Omnicom is a strategic holding company and does not provide **any** advertising or marketing services. (Cohen Decl. ¶ 2, 10). In addition, Omnicom and DDB had no involvement in creating the Video or submitting it to the Cannes

7

Festival.  (*Id*. ¶ 10; Walker Dec. ¶ 5).  To the extent that DDB provides services to *other* clients in North Carolina, these services have no connection with this suit, which relates exclusively to the Video created by DM9 featuring products sold by Whirlpool S.A.  *See Freud Am., Inc. v. Milwaukee Elec. Tool Corp.*, 2020 U.S. Dist. LEXIS 248655, at \*\*12-14 (M.D.N.C. June 17, 2020) (no specific jurisdiction based on defendant's solicitation of other business in North Carolina because it had no affiliation with underlying controversy).  Likewise, because Omnicom and DDB are not incorporated or headquartered in North Carolina, any services they might provide in North Carolina cannot subject them to general jurisdiction.  *Daimler*, 571 U.S. at 137.

Because Plaintiff has "failed to demonstrate that jurisdiction discovery would dictate a different result or is otherwise necessary," her motion should be denied.  *Van Duyn v. Innovative Mill Wright Servs., Inc.*, 2014 U.S. Dist. LEXIS 119599, at \*6 (W.D.N.C. Mar. 19, 2014), *memorandum and recommendation adopted*, 2014 U.S. Dist. LEXIS 119602 (W.D.N.C. Aug. 27, 2014).  Courts do not grant plaintiffs free reign to "explore" jurisdictional facts, as Plaintiff requests.  Having failed to identify a single fact that would, if discovered through jurisdictional discovery, establish personal jurisdiction over any Defendant, it is clear that Plaintiff merely "wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction." *Base Metal Trading, Ltd.*, 283 F.3d at 216 n.3.  Jurisdictional discovery is not appropriate in such circumstances, and the Court should not grant it here.  *See, e.g.*, *Reynolds v. United States*, 2023 U.S. Dist. LEXIS 161945, at \*28 (E.D.N.C. July 21, 2023) ("Plaintiffs have failed to show that jurisdictional discovery would aid this court in determining wither it may invoke personal jurisdiction . . . ."); *Brown*, 2017 U.S. Dist. LEXIS 142092, at \*\*6-7 (denying request for jurisdictional discovery where plaintiff "provid[es] no indication as to what specific information or type of information [she] hopes to find through jurisdictional discovery").

## II. PLAINTIFF'S PROPOSED AMENDMENTS ARE FUTILE AND SHOULD BE DENIED

Whether to grant amendment is left to the discretion of the Court. *Sullivan v. City of Frederick*, 738 Fed. Appx. 198, 199 (4th Cir. 2018). Among other reasons, courts should deny leave to amend "if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citations omitted). Amendment would be futile here because the proposed revisions do not, and cannot, overcome the Complaint's fundamental jurisdictional and pleading deficiencies.

As a threshold matter, courts routinely find that amendment will be futile where, as here, "it fails to remedy any of the jurisdictional defects present in the original complaint." *Ferraro v. Rodgers*, 2025 U.S. Dist. LEXIS 84479, at **13-14 (E.D.N.C. May 2, 2025); *see also Julian v. Bank of Am., N.A.*, 2017 U.S. Dist. LEXIS 151368, at **15-16 (W.D.N.C. Sept. 8, 2017) (holding that amending complaint would be futile because "it would be impossible for Plaintiffs to correct . . . the personal jurisdiction issues" for certain defendants and "highly unlikely" that they could correct the personal jurisdiction issues for the remaining defendants); *Vient v. Sanford Herald*, 2020 U.S. Dist. LEXIS 141140, at *9 (M.D.N.C. Aug. 7, 2020) (denying leave to amend because even when considering the proposed amended complaint, "the court has no specific or general personal jurisdiction over" defendant). As explained above, Plaintiff's Complaint fails to allege facts that would subject Defendants to personal jurisdiction in this Court, and this failure cannot be overcome by jurisdictional discovery. (*Supra*, Section I). The Proposed Amended Complaint does not add ***any*** facts to remedy these jurisdictional deficiencies. (*Id.*) Accordingly, permitting Plaintiff to file the Proposed Amended Complaint would be futile because she will not be able to

9

establish personal jurisdiction over any of the Defendants. The Cross-Motion should be denied for that reason alone.

Moreover, leave to amend should not be granted because, notwithstanding the proposed new allegations, the Proposed Amended Complaint still would not withstand Rule 12(b)(6) scrutiny. *LifeWise Family Fin. Sec. v. Holden*, 988 F.3d 743, 750 (4th Cir. 2021). Plaintiff's Proposed Amended Complaint fails to add any allegations that could possibly salvage her claims.

First, as discussed in the Motion to Dismiss and Reply, Plaintiff's defamation claim should be dismissed because, among other reasons, she cannot allege that the minor alterations to the Video are sufficiently defamatory, meaning Plaintiff was "disgrace[d] and degrade[d]" or subject to "public hatred" or "shunn[ing]." *Boyce & Isley v. Cooper*, 153 N.C. App. 25, 30-31 (2002) (citations omitted); (Mot. at 16-17; Reply at 8-9). Because the benign statement at issue—that "[i]n low-income communities in Sao Paolo, the average electricity bill cost represents 30% of their monthly income"—on its face is not defamatory, the Proposed Amended Complaint tries to but ultimately does not remedy that fundamental flaw. (Calazans Decl., Ex. 1 at 0:27-0:40). Plaintiff now alleges it was "embarrassing and reputation-damaging" for her to field questions from the media about the Video after news came out that it had been altered. (Prop. Am. Compl. ¶ 126). Such allegations still do not come anywhere close to the level of public hatred and shunning necessary for a statement to be deemed defamatory. Moreover, by her own allegations, any embarrassment was not tied to the substance of the statement itself, but to the press inquiries that followed. The Video simply does not say or imply anything disparaging about Plaintiff or her character. And as the after-the-fact press reports make clear, the only criticism that has resulted has been directed to the Video's creators, not Plaintiff. (Gattoni Decl., Exs. A, P-S). Amending the Complaint to include conclusory allegations that "Plaintiff has been exposed to public ridicule,

humiliation and harm to her professional and personal reputation" cannot change any of these basic facts. (Prop. Am. Compl. ¶ 133.)

Second, Plaintiff fails to allege an unfair and deceptive practices claim because she does not (and cannot) allege that the Video had any effect on North Carolina consumers or businesses. (Mot. at 17-19; Reply at 9-10). Recognizing this deficiency, the Proposed Amended Complaint attempts to add facts indicating that the Video had a "foreseeable effect on commerce in North Carolina." (Prop. Am. Compl. ¶ 93). But none of these new allegations plausibly allege any impact on North Carolina *consumers* or *businesses*, and are thus unavailing. Specifically, Plaintiff hypothesizes that unspecified "North Carolina businesses and organizations may rely on [her] statements," and because "Whirlpool products" are sold in North Carolina, a "misrepresentation of Plaintiff's professional endorsement could influence business decisions, professional engagements, and market perception within North Carolina." (Prop. Am. Compl. ¶ 93). Not only is this far-fetched theory unsupported by any facts, but it continues to overlook the critical fact that **no** "Whirlpool products" sold by Whirlpool in the United States are endorsed or advertised in the Video. As she has throughout her submissions to the Court, Plaintiff ignores that the Video features only Consul-branded products that are not sold in the United States. (Quinn Decl. ¶¶ 16-18).

There is simply no possibility that North Carolina consumers may be misled into purchasing products or otherwise harmed by the Video, and the Proposed Amended Complaint does not offer any facts to suggest otherwise. The allegations in the Proposed Amended Complaint do not change what is fundamentally a Brazilian issue into a "primarily local [North Carolina] concern." *The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 502 (M.D.N.C. 1987) (stating that N.C. Gen. Stat. § 75-1.1 addresses "primarily local concerns" and declining to apply

it "in cases having only an incidental local effect"). Nor does calling the Video an "Advertisement" change the fact that "Plaintiff was neither a seller nor a consumer in relation to any of the [d]efendants," *Adams v. Jenkins*, 2016 U.S. Dist. LEXIS 184705, at \*5 (W.D.N.C. Sept. 29, 2016) (recommending dismissal), and North Carolina consumers "were not encouraged to act in any commercial manner as a result of the" Video, nor "change[d] their position in reliance" thereon, *Prince v. Wright*, 141 N.C. App. 262, 269 (2000) (affirming dismissal). The Proposed Amended Complaint does not remedy any of these deficiencies and therefore would be futile.

Third, the Proposed Amended Complaint fails to salvage Plaintiff's Lanham Act false endorsement claim.[2] As discussed in the Motion to Dismiss, the original Complaint failed to plausibly allege, among other things, that (i) the Video was used in domestic commerce, or (ii) the use of her image and likeness indicates her endorsement of the products at issue. (Mot. at 19, 21; Reply at 10); *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 421 (2023); *Champion v. Moda Operandi, Inc.*, 561 F. Supp. 3d 419, 438 (S.D.N.Y. 2021). Plaintiff now attempts to satisfy the Supreme Court's domestic commerce requirement by alleging that the Video's "dissemination . . . by being in the Cannes . . . Festival online and through industry publications constitutes use in domestic commerce under the Lanham Act" because it was "accessible to U.S. consumers and professionals and impacted Plaintiff[]" in North Carolina. (Prop. Am. Compl. ¶ 108). This is insufficient to show domestic use in commerce, which requires use in connection with United States sales or services. *See LegalForce RAPC Worldwide, P.C. v. LegalForce, Inc.*, 124 F.4th 1122, 112627 (9th Cir. 2024) (upholding dismissal because defendant's "services are all outside the United States, so the Lanham Act cannot apply to them"). Likewise, allegations that

---

[2] Acknowledging that it was never properly pleaded, Plaintiff drops her Lanham Act false advertising claim from the Proposed Amended Complaint. (Prop. Am. Compl. Count III).

Cannes Festival submissions must be in English and U.S. companies tend to win more than other countries do not transform an awards festival in France into an activity in United States commerce. (Prop. Am. Compl. ¶ 107). The new allegations do not, and cannot, change the fact that the Video was created in Brazil, about Brazilian local issues, featuring Consul-branded products sold primarily in Latin America and not in the United States, for purposes of attracting Brazilian marketing talent. (Mot. at 3-4; Calazans Decl. ¶¶ 3-4, 7-8, 11-12; Quinn Decl. ¶¶ 16-18). The Proposed Amended Complaint does not plead any facts from which this Court could plausibly infer that the Video was used to market any products or services in the United States, and for that reason alone, amendment would be futile.[3]

Moreover, the Proposed Amended Complaint cannot overcome the Video itself, which, notwithstanding Plaintiff's conclusory allegations to the contrary, on its face does not suggest any endorsement of any product or service. Plaintiff does not appear with any Consul-branded product in the Video. *Champion*, 561 F. Supp. 3d at 438 (dismissing false endorsement claims because defendant's brand name "appears nowhere on the screens containing plaintiffs' images"). Instead, her brief appearance in the Video merely adds additional context regarding the energy affordability issues that are the backdrop of the hypothetical Consul program. (Calazans Decl., Ex. 1 at 0:27-0:40). As a result, the Proposed Amended Complaint would be futile.

Fourth, Plaintiff's right-of-publicity claim should be dismissed for failure to allege that her image and likeness holds commercial value—i.e., that it is recognizable to the target audience of the Video. (Mot. at 21-22; Reply at 10-11). The Proposed Amended Complaint misses the mark

---

[3] Plaintiff also adds new allegations that the Video would "falsely imply to a reasonable person that Plaintiff associated with and agreed to render her professional services to Defendants in support of Defendants submitting their advertisement to the Cannes . . . Festival." (Prop. Am. Compl. ¶ 101). By its own terms, such allegation does not implicate any actions taken in domestic commerce.

in attempting to address this issue. Plaintiff newly asserts that her name and likeness have commercial value because of her "energy expertise" and "extensive engagement in the speaking industry." (Prop. Am. Compl. ¶ 81). But Plaintiff does not, and cannot, allege any facts indicating that anyone in the target audience of the Video—Brazilian advertising and marketing professionals—would recognize her, which is the relevant inquiry. *See Hudson v. Datanyze LLC*, 2025 U.S. App. LEXIS 749, at \*\*6-7 (6th Cir. Jan. 13, 2025) (affirming dismissal where plaintiffs did "not allege that their names and likenesses were particularly valuable or recognizable to [defendant's] targeted customers—business recruiters, salespersons, and marketers"). Accordingly, Plaintiff still fails to allege that her image and likeness hold commercial value, which numerous courts, including within the Fourth Circuit, have recognized is essential to bring a right-of-publicity claim. *See, e.g., Fundamental Admin Servs., LLC v. Anderson*, 2014 U.S. Dist. LEXIS 157871, at \*\*17-18 (D. Md. Nov. 6, 2014) (citations omitted); *Uhlig LLC v. Shirley*, 2011 U.S. Dist. LEXIS 31833, at \*\*22-23 (D.S.C. Mar. 25, 2011) (explaining that a certain "level of celebrity status [is] required to support an appropriation of personality claim").

Fifth, Plaintiff's IIED claim fails because she still has not alleged any misconduct that is so extreme and outrageous that it exceeds "all possible bounds of decency," or that she has suffered a diagnosable and disabling mental disorder, such as psychosis or chronic depression. *Norton v. Scot. Mem. Hosp., Inc.*, 250 N.C. App. 392, 402-03 (2016); *Torres v. Ishee*, 2022 U.S. Dist. LEXIS 48973, at \*12 (W.D.N.C. Mar. 17, 2022); (Mot. at 22-23; Reply at 10-11). In the Proposed Amended Complaint, Plaintiff attempts to support her conclusory allegation that Defendants' conduct was "extreme and outrageous" by emphasizing that Defendants "manipulat[ed]" her image and likeness and used it in a "highly publicized, international festival" without notice to Plaintiff, and "involved the knowing exploitation of Plaintiff's identity and reputation for profit."

(Prop. Am. Compl. ¶¶ 113-14). If that were sufficient to state an IIED claim, then every right-of-publicity claim would constitute IIED. That is not the law. On its face, the minor alterations to the Video do not rise to the level of depravity necessary to sustain an IIED claim. The Video altered seven seconds of Plaintiff's TED Talk regarding energy affordability so that it addressed Brazil rather than the United States. (Calazans Decl., Ex. 1 at 0:30-0:37). By any standard, this is not "atrocious and utterly intolerable." *Carrington v. Carolina Day Sch., Inc.*, 837 S.E.2d 383, 383 (N.C. App. 2020).

The Proposed Amended Complaint also fails to allege that Plaintiff suffered severe emotional distress. Plaintiff now asserts that the Video caused her "migraines," "humiliation, reputational damage," "anxiety, . . . loss of sleep, and physical manifestations of stress." (Prop. Am. Compl. ¶¶ 76, 115, 117). But none of these alleged symptoms amount to a "severe or disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Torres*, 2022 U.S. Dist. LEXIS 48973, at *12; *Walton v. Villines*, 2021 U.S. Dist. LEXIS 154457, at *15 (W.D.N.C. July 26, 2021) (holding that "[c]onclusory recitations of Plaintiff's symptoms" including migraines and anxiety were not sufficient to sustain an IIED claim) (citations omitted). Again, amendment would be futile.

Finally, the Proposed Amended Complaint still does not plead a viable claim against any of the U.S. Parent Companies because it still does not plausibly allege (i) any actionable culpable conduct by the U.S. Parent Companies themselves, or (ii) grounds to pierce the corporate veil such that the U.S. Parent Companies could be held liable for the conduct of their Brazilian subsidiaries. (Mot. at 23-25; Reply at 6-7, 11-12). For the most part, Plaintiff's new allegations continue to refer indiscriminately to "Defendants" without identifying any conduct by any particular Defendant that could give rise to her claims. (*See, e.g.*, Prop. Am. Compl. ¶¶ 84, 101, 114). Not

15

only are such allegations improper under Rule 8, but they are also inherently contradictory and, ultimately, false. *See Bagwell v. Dimon*, 2015 U.S. Dist. LEXIS 64483, at \*\*18-19 (M.D.N.C. May 18, 2015) (holding plaintiff violated Rule 8 by "repeatedly lump[ing] the Defendants together"). For example, Plaintiff now alleges that "Defendants altered and manipulated" her TED Talk, (Prop. Am. Compl. ¶ 121), but still continues to concede that "DM9 created" the Video, (*id.* ¶ 41). Likewise, her only new allegation about conduct of a particular U.S. Parent Company is to now claim that "DM9 *and Whirlpool* created the [Video]," (*id.* ¶ 43), but again that conclusory allegation is baseless and contradicted by her other allegations. Not surprisingly, the Proposed Amended Complaint does not add a single allegation from which Plaintiff could assert liability under a veil-piercing theory. *See, e.g., Dobson v. Charlotte School of Law*, 2017 U.S. Dist. LEXIS 117841, at \*\*9-10 (W.D.N.C. July 27, 2017) (piercing the corporate veil requires allegations that a parent company exercises "complete domination [over a subsidiary], not only of finances, but of policy and business practice in respect to the transaction attacked" demonstrated by factors such as "[i]nadequate capitalization, or [n]on-compliance with corporate formalities") (citations omitted). For these reasons, the Proposed Amended Complaint is futile, and leave to amend should be denied.

## **CONCLUSION**

Defendants respectfully request that the Court deny Plaintiff's Cross-Motion for jurisdictional discovery and for leave to amend the Complaint.

16

Dated: January 16, 2026                    Respectfully submitted,

*s/ Guy Cohen*
Guy Cohen (admitted *pro hac vice*)
Jacklyn M. Siegel (admitted *pro hac vice*)
Charlotte McCary (admitted *pro hac vice*)
**DAVIS & GILBERT LLP**
1675 Broadway
New York, NY 10019
(212) 468-4800
gcohen@dglaw.com
jsiegel@dglaw.com
cmccary@dglaw.com

*s/ Kyle R. Hair*
Kyle R. Hair
**ALSTON & BIRD LLP**
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
(704) 444-1167
Kyle.Hair@alston.com

*Attorneys for Defendants Omnicom Group Inc., Whirlpool Corporation, DDB Worldwide Communications Group LLC, DM9 Comunicacao Ltda, Whirlpool Do Brasil Ltda*

17

**ARTIFICIAL INTELLIGENCE (AI) CERTIFICATION**

I hereby certify the following:

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

Every statement and every citation to an authority contained in this document has been checked by an attorney and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: January 16, 2026

*s/ Kyle R. Hair*
Kyle R. Hair

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that a copy of the foregoing Opposition to Plaintiff's Cross-Motion for Leave to File Amended Complaint and for Limited Jurisdictional Discovery was filed electronically by Defendants. Notice of this filing will be sent by email to counsel for Plaintiff by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/ Kyle R. Hair*

Kyle R. Hair
