# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

DEANDREA SALVADOR,

     Plaintiff,

     v.

OMNICOM GROUP INC., et al,

     Defendants.

Case No. 3:25-cv-00628

 

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES**

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ......................................................................................1

**FACTUAL & PROCEDURAL BACKGROUND** ....................................................4

    A. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction................................... 4

    B. Plaintiff's Jurisdictional Discovery Motion................................................................ 5

    C. Plaintiff's Extraordinary Discovery Requests Violate the Court's Order ......................... 6

    D. Plaintiff Refuses to Meet and Confer in Good Faith ................................................... 6

**ARGUMENT**..................................................................................................................8

    I. The Motion Should be Denied Because Plaintiff Failed to Properly Meet and Confer as Required by Local Civil Rule 7.1(b)....................................................... 8

    II. Plaintiff's Requests Are Not Relevant to General Jurisdiction ....................................... 8

    III. Plaintiff's Requests Are Not Relevant to Specific Jurisdiction .................................... 10

        A. Request No. 1 Seeks Discovery of Contacts Unrelated to the Lawsuit ...................... 11

        B. Requests Nos. 3, 4 and 5 Seek Impermissible Merits Discovery .............................. 14

    IV. Plaintiff's Veil-Piercing Discovery Is Improper.................................................... 17

    V. The Requests Are Oppressive, Unduly Burdensome, and Violate the Order ................... 19

    VI. The Court Should Issue a Protective Order and Award Defendants Their Attorneys' Fees ........................................................................................ 20

**CONCLUSION** ............................................................................................................**20**

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accu-Sport Int'l, Inc. v. Swing Dynamics, Inc.*,
367 F. Supp. 2d 923 (M.D.N.C. 2005) ...............................................................................14

*Beyond Systems, Inc. v. World Avenue USA, LLC*,
2010 U.S. Dist. LEXIS 158-31 (D. Md. June 2, 2010)........................................................18

*Bristol-Myers Squibb Co. v. Superior Ct.*,
582 U.S. 255 (2017)............................................................................................................10

*Cabell v. Zorro Prods.*,
294 F.R.D. 604 (W.D. Wash. 2013) ...................................................................................13

*Calder v. Jones*,
465 U.S. 783 (1984).....................................................................................................14, 15

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)..............................................................................................................8

*Duong v. N. Am. Transp. Servs. LLC*,
2019 U.S. Dist. LEXIS 241092 (D.S.C. Sept. 25, 2019)....................................................17

*Farrar v. Cessna Aircraft Co.*,
2019 U.S. Dist. LEXIS 16228 (S.D.W.V. Feb. 1, 2019) ....................................................13

*Ford Motor Company v. Montana Eighth Judicial District Court*,
592 U.S. 351 (2021)..........................................................................................9, 11, 12, 13

*Freud Am., Inc. v. Milwaukee Elec. Tool Corp.*,
2020 U.S. Dist. LEXIS 248655 (M.D.N.C. June 17, 2020) ..........................................10, 13

*Gourdine v. Karl Storz Endoscopy-Am., Inc.*,
2015 U.S. Dist. LEXIS 175781 (D.S.C. Nov. 6, 2015) ......................................................18

*Grp., Inc. v. Ripkurrent, LLC*,
2024 U.S. Dist. LEXIS 1654573 (W.D.N.C. Aug. 13, 2014)..............................................17

*Johnson v. Lendlease (US) Pub. P'ships LLC*,
2022 U.S. Dist. LEXIS 117888 (E.D.N.C. July 5, 2022) ...................................................17

*Megan Lee Studio, LLC v. Tieguys.com, Inc.*,
2023 U.S. Dist. LEXIS 153580 (W.D.N.C. Aug. 29, 2023)................................................12

*Mobilization Funding, LLC v. Stokes*,
 163 F.4th 55 (4th Cir. 2025) ..................................................................................................10

*Premier Research In''l, LLC v. Medpace, Inc.*,
 2020 U.S. Dist. LEXIS 179669 (M.D.N.C. Sept. 30, 2020)....................................................13

*Spendlove v. RapidCourt, LLC*,
 2019 U.S. Dist. LEXIS 220392 (E.D. Va. Dec. 20, 2019) ......................................................13

*Wallace v. Greystar Real Estate Partners, LLC*,
 2019 WL 4305849 (M.D.N.C. Sept. 11, 2019)........................................................................18

*Wallace v. Yamaha Motors Corp., U.S.A.*,
 2022 U.S. App. LEXIS 447 (4th Cir. Jan. 6, 2022) .................................................................12

*Wilson & Wilson Holdings LLC v. THC, LLC*,
 673 F. Supp. 3d 409 (S.D.N.Y. May 15, 2023) .......................................................................18

*Woods Int'l, Inc. v. McRoy*,
 436 F. Supp. 2d 744 (M.D.N.C. 2006) .....................................................................................11

*Young v. New Haven Advocate*,
 315 F.3d 256 (4th Cir. 2002) ..............................................................................................10, 14

**Other Authorities**

Fed. R. Civ. P. 26(b)(1).................................................................................................................19

Local Civil Rule 7.1(b) ..........................................................................................................1, 7, 8

Rule 26(c).......................................................................................................................................19

Rule 37(a)(5)(B).............................................................................................................................19

Defendants Omnicom, DDB, and Whirlpool ("U.S. Defendants"), and DM9 and Whirlpool Do Brasil ("Brazilian Defendants"), submit this brief in opposition to Plaintiff Deandrea Salvador's Motion to Compel Discovery Responses (the "Motion").[1] The Motion should be denied for multiple reasons, including but not limited to: (1) Plaintiff failed to meet and confer as required by Local Civil Rule 7.1(b); (2) Plaintiff violated the limited jurisdictional discovery order (the "Order") by serving hundreds of discovery requests; (3) Plaintiff violated the Order by seeking discovery (a) on the merits, and (b) from specifically excluded third parties; and (4) Plaintiff's requests are unduly burdensome, designed to harass, and do not seek any information relevant to jurisdiction that Plaintiff does not already possess.

## PRELIMINARY STATEMENT

This case concerns an awards submission video (the "Video") created in Brazil by a Brazilian ad agency concerning a hypothetical program that could help low-income Brazilians save on utility bills. The program involved a Brazilian appliance brand that a non-party Brazilian company sells to Brazilian and Latin American consumers. After the Brazilian agency submitted the Video to a festival in France, hoping to bolster its reputation and attract Portuguese-speaking talent to service its Brazilian clients, allegations surfaced that AI had been used to alter certain content in the Video, including a TED Talk that Plaintiff gave in Canada.

These are the undisputed facts upon which Plaintiff commenced suit, naming the Brazilian agency, a Brazilian holding company, and three U.S. companies that are organized and/or have their principal places of business in New York, Delaware, and Michigan. The only connection to

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Memorandum in Support of Defendants' Motion to Dismiss the Complaint (Dkt. 20) (the "Motion to Dismiss"). References to the Quinn, Calazans, Walker, and R. Cohen Declarations refer to declarations submitted in support of the Motion to Dismiss (Dkt. Nos. 21-25). References in the form of "Ex. __" refer to exhibits annexed to the Declaration of Guy Cohen, submitted herewith.

1

North Carolina is Plaintiff's residence here—an undisputed fact that doesn't require jurisdictional discovery and is insufficient to subject any of the Defendants to jurisdiction here, under any theory.

Seeking to avoid dismissal—and despite failing to identify a single factual dispute or missing fact relevant to jurisdiction—Plaintiff asked this Court to allow "limited" jurisdictional discovery to the tune of dozens of document requests and interrogatories, and multiple depositions, of parties and non-parties alike. At the May 6 hearing and in the preceding briefing, Defendants emphasized that Defendants already produced in their voluntary submissions, and therefore Plaintiff already possesses, all relevant information on jurisdiction. Defendants repeatedly challenged Plaintiff's counsel to identify a single additional jurisdictional fact Plaintiff needed to discover. (Ex. A (Transcript of May 6, 2026 Motion Hearing and Status Conference (the "Hearing")), at 23-26.) He could not do so. Instead, Plaintiff's counsel regurgitated questions that go solely to the merits: who knew about Plaintiff's TED Talk, when they knew, etc. (*Id.* at 4-5; 35-36). Because Plaintiff's counsel had nothing to say, Defendants predicted that the parties would be back before the Court arguing about the scope of permissible discovery. (*Id.* at 29-30).

In considering Plaintiff's request, the Court expressed similar reservations:

> Well, let me interrupt you for just a moment. . . . One of the issues that I have with this question is a lot of what you're talking about seems to go to the merits of the case as opposed to the question of whether the Court has personal jurisdiction over the defendants. And so I will go ahead and tell you that if I were to allow jurisdictional discovery, it would be limited to matters of jurisdiction and I would not allow the plaintiff to go into issues of the merits of the case.

(*Id.* at 5:11-20). That concern was amplified by Plaintiff's failure to provide copies of the anticipated discovery requests:

> I haven't seen [the proposed discovery requests]. That was one reason I asked Mr. McHattie. So we're doing this a little bit in a vacuum here today. And as I said to him, I have some concern here if we don't have those, frankly what I don't want to see is for them to serve some things and then the defense object and then we have months of, you know, briefing about why this is beyond the scope or this is too far, this is merits discovery and this is --no, this is not merits discovery.

2

(*Id.* at 28; *see also id*. at 10).  Ultimately, the Court rejected Plaintiff's "limited" discovery request and allowed only five document requests and five single-part interrogatories to each party, pertaining to current parties only, as to jurisdiction only, not the merits of the case:

> That would be <u>five</u> interrogatories per defendant, <u>five</u> requests for production per defendant and one deposition per defendant of up to four hours on the record.  That pertains to all of the <u>current</u> defendants, that is, the defendants named in the complaint, the existing pleading. That does not pertain to and the <u>plaintiff is not allowed to conduct jurisdictional discovery as to other parties</u>. That would be, including but not limited to, <u>potential defendants</u> or the film festival. Also as we discussed… this is limited to jurisdictional discovery and is – the <u>plaintiff is not given leave to conduct merits-based discovery</u>."

(*Id.* at 38-39 (emphasis added); *see also* Ex. B).  Plaintiff assured this Court that "[w]e're not going to turn it into a fishing expedition" and "we'll be single-minded in making sure we're doing…what the Court is trying to get us to do… and not getting far afield" (*id.* at 11), and that it would be "efficient, curtailed, not over the top" (*id.* at 17).

Plaintiff reneged on those assurances and flagrantly disregarded the Court's instructions. Plaintiff served <u>expansive</u> document requests and interrogatories (each a "Request," and collectively the "Requests"), each containing ten or more sub-parts—effectively <u>hundreds</u> of requests; pertaining to the <u>merits</u> and not jurisdiction; seeking information regarding <u>non-parties</u>; and otherwise having nothing to do with the limited issues of general or specific jurisdiction.

Plaintiff continues to ignore that Defendants <u>previously</u> provided every fact relevant to jurisdiction.  Nevertheless, Defendants tried to discuss compromises with Plaintiff to no avail (as discussed below), and, despite Plaintiff's counsel's unprofessional conduct and refusal to meet and confer in good faith, Defendants have now provided still <u>more</u> information.

Defendants are not subject to general jurisdiction in North Carolina because none of them is incorporated or has its principal place of business here.  Defendants are not subject to specific jurisdiction either, because the Video indisputably was not expressly aimed at North Carolina, so

3

there is no affiliation between the underlying controversy and North Carolina. These are the only relevant inquiries at this stage, and Plaintiff already has all information that could possibly relate to them. Given multiple opportunities, Plaintiff has failed to identify anything Plaintiff lacks that's even arguably relevant to jurisdiction. Plaintiff's Requests are instead precisely the baseless, burdensome fishing expedition against which this Court cautioned. Accordingly, Defendants request that the Court deny the Motion, bar Plaintiff from seeking documents or information beyond what Defendants already provided in support of their Motion to Dismiss and in response to Plaintiff's Requests, and award Defendants their costs in responding to this Motion.

<u>**FACTUAL & PROCEDURAL BACKGROUND**</u>

**A.      Defendants' Motion to Dismiss for Lack of Personal Jurisdiction**

Plaintiff's claims arise from use of her TED Talk in an awards Video submitted to the Cannes Festival. DM9, a Brazilian agency, created the Video, which referenced Consul-brand appliances that are not sold in the U.S. (*Id.* ¶¶ 3, 8, 15-16). The energy-efficiency program discussed in the Video doesn't exist, was theorized solely for award consideration, and was never advertised to consumers. (Quinn Decl. ¶ 20; Calazans Decl. ¶¶ 15, 19). After the Video won an award, it came to light that DM9's Chief Creative Officer ("CCO") had altered a clip in the Video from Plaintiff's TED Talk so that it referenced issues in Brazil instead of the U.S. (Calazans Decl. ¶¶ 21-24). DM9 then terminated its CCO, and the Cannes Festival withdrew the award. (*Id.* ¶ 25). Whirlpool, Omnicom, DDB, and Whirlpool Do Brasil didn't create or produce the Video or submit it to Cannes. (*Id.* ¶ 17; R. Cohen Decl. ¶ 10; Walker Decl. ¶ 5; Quinn Decl. ¶¶ 22-23). Instead, DM9 was solely responsible for creating and producing the Video. (Calazans Decl. ¶ 24).

Given the Video's focus on Brazil and lack of connection to the U.S., Defendants moved to dismiss for lack of personal jurisdiction, or alternatively for failure to state a claim. As explained

4

in the Motion to Dismiss, this Court lacks (a) general jurisdiction because none of the Defendants is incorporated or has its principal place of business in North Carolina and (b) specific jurisdiction because Plaintiff has not alleged that Plaintiff's claims arise out of contacts with North Carolina. (Dkt. No. 20 at 9-15). Plaintiff opposed the Motion to Dismiss, arguing that the Video itself targeted North Carolina and thus confers specific jurisdiction because it includes a clip from her TED Talk, she is a North Carolina resident and State Senator, and the Video therefore "impact[ed]" North Carolina, its voters, and Plaintiff. (Dkt. No. 33 at 13-18). The motion remains pending.

### B.     Plaintiff's Jurisdictional Discovery Motion

Recognizing the defects in Plaintiff's Complaint, Plaintiff moved to amend and to pursue "limited early jurisdictional discovery." (Dkt. No. 34 at 1). Defendants opposed, arguing that the requests were far from "limited," didn't concern the narrow issue of personal jurisdiction, and failed to identify facts to be discovered that could support jurisdiction. (Dkt. No. 37 at 1-3).

During the May 6, 2026 hearing on the motion, Plaintiff conceded there is no basis to pursue general jurisdiction over the Brazilian Defendants. (Ex. A at 10:1-3). Instead, Plaintiff claimed to be pursuing general and specific jurisdiction over the U.S. Defendants, and specific jurisdiction only as to the Brazilian Defendants on the theory that the U.S. Defendants control them. (*Id*. at 10:5-9). When pressed by the Court to identify the subjects of the anticipated discovery requests, Plaintiff focused on the creation of the Video and "[w]ho did it." (*Id.* at 4:14). In response, the Court warned Plaintiff's counsel that he was treading into merits discovery, which would not be permitted. (*See id.* at 5:11-20, 10:16-22, 5:17-20, 39:7-9). The Court noted that "certain types of questions" might relate to "a general jurisdiction theory," but to the extent Plaintiff is "pursuing a specific jurisdiction theory, then that may be <u>more focused on the specifics of this case</u>." (*Id*. at 11:23-12:3) (emphasis added). The Court ultimately authorized service of five document requests and five interrogatories on the named Defendants and prohibited discovery

of non-parties, including Whirlpool S.A. (*Id.* at 38:19-39:9; Ex. B at 2-3).

### C. Plaintiff's Extraordinary Discovery Requests Violate the Court's Order

Flouting the Court's instructions, Plaintiff served voluminous Requests that violated the Order. The hundreds of Requests sought <u>merits-related</u> discovery, information <u>irrelevant to jurisdiction</u> under any theory, and information about <u>non-parties</u>. Each Request contained 10 to 21 subparts that were not merely "illustrative" examples of a common theme, but rather constituted substantive, standalone demands. The Requests were directed not only to Defendants, but also to their subsidiaries and affiliates, including non-party Whirlpool S.A. The Requests sought details of every "actual and prospective" business activity and contact "in, from or directed at" North Carolina for the last five years (No. 1), every aspect of the Video's creation and reception (Nos. 3, 4, 5), and every intricacy of Defendants' relationships with subsidiaries and affiliates (No. 2).

Tacitly acknowledging Plaintiff's misconduct, counsel sent with the Requests a <u>four-page</u> cover letter attempting to justify the Requests "before you 'react' to the attached," explicitly expecting "needless dispute and motion practice...." (Ex. C. at 1). Defendants served detailed objections explaining the many deficiencies in the Requests. (Exs. D, E). Again, realizing the error—and contrary to the plain text of the Requests—Plaintiff attempted to repackage the hundreds of demands by claiming they fall into only five "categories." (Exs. H, I).

### D. Plaintiff Refuses to Meet and Confer in Good Faith

The parties corresponded via email to schedule a meet-and-confer. (Ex. H). In that correspondence, Plaintiff's counsel made it very clear that he had no intention of complying with his meet-and-confer obligations. (G. Cohen Decl. ¶¶ 13-14; Ex. H). This strategy was perhaps an attempt to avoid the repercussions of serving patently improper Requests.

On June 26, counsel convened by Zoom to meet and confer—a call for which Plaintiff's

6

counsel had asked, shortly beforehand, to either record or move to his own recording-capable platform, apparently to capture his own conduct on the call for some unknown audience. (Ex. H at 2). Despite Defendants' willingness and intent to discuss each response and objection, including proposals to supplement responses and suggestions for potential compromise, Plaintiff's counsel refused to participate in good faith. (*See* G. Cohen Decl.).

From the outset, counsel behaved in a manner which is wholly inconsistent with a good-faith meet-and-confer: he repeatedly raised his voice, cut off Defendants' counsel when he tried to speak, and refused to let Defendants' counsel address any points or otherwise participate in a proper meet-and-confer. (*Id.* ¶ 20). Indeed, Plaintiff's counsel literally attempted to cross-examine defense counsel, continuing this conduct even after Defendants' counsel repeatedly asked him to act professionally and tried to de-escalate. (*Id.* ¶ 19-22). Plaintiff's counsel refused to allow Defendants to address any specific Requests, instead aggressively declaring that he was "furious" with Defendants' counsel and belaboring the treatment Plaintiff has received—even though the merits of Plaintiff's claims have no bearing on jurisdictional discovery or the appropriateness of the Requests. (*Id.* ¶¶ 20, 21). Rather than engaging with the specifics of Plaintiff's Requests, Plaintiff's counsel badgered Defendants' counsel with sweeping, cross-examination-type questions about personal jurisdiction (and unrelated matters), fishing for some type of "gotcha" response. (*Id.* ¶¶ 19, 22).

Following the unproductive call berating Defendants' counsel, Whirlpool and Whirlpool Do Brasil provided supplemental responses to the Requests, which included a potential compromise solution. (*See, e.g.* Ex. F at 6). Additionally, Defendants sent a detailed letter further explaining their position (already made clear in their objections) and requesting that Plaintiff provide a basis for the belief that the Requests are appropriate jurisdictional inquiries. Defendants

also reiterated in the letter their desire to work cooperatively and engage in a legitimate meet-and-confer and demanded that Plaintiff withdraw the present Motion until Plaintiff participated in a meet-and-confer. (Ex. J). Defendants received no response.

**ARGUMENT**

**I.  The Motion Should be Denied Because Plaintiff Failed to Properly Meet and Confer as Required by Local Civil Rule 7.1(b)**

Local Rule 7.1(b) requires a moving party to certify that it has "conferred and attempted in good faith to resolve areas of disagreement" with the opposing party before filing a discovery motion, and absent appropriate conferral, a motion "may be summarily denied." Good-faith conferral requires substantive engagement — an actual attempt to resolve the disputed issues, not a performance in which one counsel grills the other.

Plaintiff did not, and evidently never intended to, meet this standard. Before the June 26 call, Plaintiff's counsel sent a lengthy email declaring that the meet-and-confer would be a "charade," characterizing Defendants' objections to the hundreds of requests as a "big corporation 'let's waste everyone's time' approach." (Ex. H at 5). In his email, he foreshadowed that his conduct on the call would be uncooperative, stating that he felt Defendants' objections and the meet-and-confer process was a "transparent effort to shift burden and expense" and he was not "not going to participate in it." (*Id.* at 7). Plaintiff's counsel proceeded on the call precisely as foretold, as addressed above.

Filing a motion to compel after a single call in which the moving party refuses to engage in the meet-and-confer constructively does not satisfy Local Rule 7.1(b). This Court can and should summarily deny the Motion.

**II.  Plaintiff's Requests Are Not Relevant to General Jurisdiction**

To establish general jurisdiction, Plaintiff must show that a Defendant's principal place of

8

business or state of incorporation is North Carolina. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Defendants already provided this information and it is undisputed. Nevertheless, Request No. 1, titled "North Carolina – Purposefully Availing," seeks a ludicrous amount of information covering every contact that each Defendant—and each of their subsidiaries and affiliates—ever had or could have had with North Carolina (or, for the Brazilian Defendants, the U.S. writ large) over the past five years. <u>Forum contacts alone are not relevant to general jurisdiction</u>, however, and Request No. 1 far exceeds the scope of permissible discovery on that theory of jurisdiction.

In the Motion, Plaintiff does not even attempt to justify this (or any other) Request as being relevant to general jurisdiction. In the letter accompanying the Requests, Plaintiff cited *Ford Motor Company v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021), as if that case supports general jurisdiction over Whirlpool, Omnicom and DDB because they "effectively do 'business [] everywhere' and all actively serve North Carolina." (Ex. C at 2). And at the Hearing, Plaintiff's counsel contended that under *Ford*, "all we need is a sufficient interest in North Carolina," and that "the amount of business that they do here effectively makes them at home here." (Ex. A at 35:7-8, 37:5-6). Request No. 1 appears to fall under this misguided theory, perhaps because Plaintiff appears to have conflated purposeful availment under the specific jurisdiction test with general jurisdiction.

Plaintiff's interpretation of *Ford* is wrong. *Ford* did <u>not</u> hold that in-state business alone renders a company "at home" and confers general jurisdiction. In fact, general jurisdiction was not at issue in that case at all; the parties and the Court agreed that general jurisdiction over Ford "attaches in Delaware and Michigan [where incorporated and headquartered]—not in Montana and Minnesota [where the injuries arose]." *Ford*, 592 U.S. at 359. The Supreme Court instead addressed the application of <u>specific</u> jurisdiction where the defendant's in-state contacts did not

9

cause, but nonetheless still related to, the actual claims in the case. *Id.* at 362.

Nonetheless, although Defendants had no obligation to narrow Plaintiff's inherently improper requests, in good faith, DDB and Whirlpool[2] offered a potential compromise: Whirlpool and DDB were willing to meet and confer about potentially producing information sufficient to show revenue from North Carolina sales (Whirlpool) or clients (DDB) compared to their nationwide revenue (which would require a significant burden on Whirlpool employees as the information is not kept in this manner in the ordinary course of business) and their employees in North Carolina compared to those in their home states and nationwide. (*See, e.g.*, Exs. D at 11, F at 6). Whirlpool was also willing to provide the locations of its U.S. manufacturing facilities. (*See, e.g.*, Ex. F at 6). DDB and Whirlpool intended to discuss this proposal during the meet-and-confer, but Plaintiff's counsel refused to engage and has, by this Motion, rejected it outright.

## III.    Plaintiff's Requests Are Not Relevant to Specific Jurisdiction

To establish specific jurisdiction, Plaintiff must show that "the *suit* . . . aris[es] out of or relat[es] to the defendant's contacts with the *forum*," such that there is "an affiliation between the forum and the underlying controversy . . . ." *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017). The Fourth Circuit assesses "(1) whether the defendant purposefully availed itself of the privileges of conducting activities in the forum state, (2) whether the plaintiff's claim arises out of the defendant's forum-related activities, and (3) whether the exercise of personal jurisdiction over the defendant would be constitutionally reasonable." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002). This inquiry begins "with the first factor – the degree to which [Defendants] 'expressly aimed' some conduct related to this case at" North Carolina.

---

[2] Omnicom, DM9 and Whirlpool Do Brasil provided information concerning their lack of contacts with North Carolina and, thus, lack of relevant contacts to discover. (*See, e.g.*, Ex. E at 60-63).

*Mobilization Funding, LLC v. Stokes*, 163 F.4th 55, 61 (4th Cir. 2025) (no specific jurisdiction: "no part of [defendant's] own conduct [in the forum] related to" the project at issue).

### A. Request No. 1 Seeks Discovery of Contacts Unrelated to the Lawsuit

Request No. 1 seeks information about Defendants' North Carolina contacts. But the request is untethered to specific jurisdiction because it seeks voluminous records of every possible contact Defendants and their subsidiaries and affiliates have had with North Carolina (or the U.S.), regardless of whether they're related to this litigation. Assuming such contacts exist (which, for the Brazilian Defendants, they do not), such contacts still would be irrelevant because they're unrelated to the Video and Plaintiff's claims. *See, e.g.*, *Freud Am., Inc. v. Milwaukee Elec. Tool Corp.*, 2020 U.S. Dist. LEXIS 248655, at **13-14 (M.D.N.C. June 17, 2020) (no specific jurisdiction; denying jurisdictional discovery into in-state ads and sales because "the underlying controversy has nothing to do with [defendant's] advertisements of its power tools in North Carolina, sales of products in North Carolina, [or] solicitation of business in North Carolina"); *Woods Int'l, Inc. v. McRoy*, 436 F. Supp. 2d 744, 751 (M.D.N.C. 2006) (no specific jurisdiction: "claims in the present case d[id] not 'arise out of'" defendant's product shipments to the state).

Defendants have already provided all information relevant to specific jurisdiction regarding Request No. 1. None of them have made in-state sales or conducted in-state business related to the Video. DM9, the Brazilian entity that created the Video, does not have U.S. clients or otherwise provide services in the U.S. (Calazans Decl. ¶¶ 4-5; Ex. E at 37). Whirlpool Do Brasil, the Brazilian holding company, doesn't sell products anywhere. (Quinn Decl. ¶¶ 6-10; Ex. G at 16). Whirlpool S.A., the Brazilian subsidiary of Whirlpool Do Brasil, manufactures and sells Consul-branded products, but it's not a defendant and, moreover, does not manufacture or sell products in the U.S. (Quinn Decl. ¶¶ 11-18). Whirlpool Corporation does not sell Consul products. (*Id*. ¶ 16; Ex. G at 6). Omnicom is a holding company that doesn't directly provide marketing or

communications services in North Carolina or anywhere else. (R. Cohen Decl. ¶ 2; Ex. E at 63). And Whirlpool, Whirlpool Do Brasil, Omnicom, and DDB were not involved in creating the Video, submitting it to Cannes, or providing Plaintiff's TED Talk to DM9. (Quinn Decl. ¶ 22; R. Cohen Decl. ¶ 10; Walker Decl. ¶¶ 5-6; Ex. G at 9, 20; Ex. E at 17-18, 70).

In Plaintiff's letter, Plaintiff relied on *Ford* to justify the overbroad and irrelevant discovery requests. Plaintiff asserts that that the U.S. Defendants "each have the requisite 'minimum contacts' with the forum and, consistent with *Ford*," these contacts establish jurisdiction because they "relate to those parties' principal businesses—advertising and appliances." (Ex. C at 3). To the extent that the U.S. Defendants sell <u>other</u> products or provide <u>other</u> advertising services to <u>other</u> clients in North Carolina, that is irrelevant to specific jurisdiction because such business activities are unrelated to both the Video and the Consul products discussed in the Video. Indeed, *Ford* reaffirmed that "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State" and that this requirement "does not mean anything goes" but instead "incorporates real limits, as it must to adequately protect defendants foreign to a forum." 592 U.S. at 359-60, 362. The Supreme Court held that in the context of a products liability case, plaintiffs alleged a sufficient affiliation between Ford and the forum states because even though Ford did not manufacture or sell the actual cars at issue (plaintiffs purchased them second-hand), Ford still heavily "advertised, sold, and serviced those two car models" in the forum states. *Id*. at 365 ("In other words, Ford has systematically served a market in Montana and Minnesota <u>for the very vehicles that plaintiffs allege malfunctioned and injured them in those States</u>. So there is a strong relationship among the defendant, the forum, and the litigation") (emphasis added; citations omitted).

As a result, under *Ford*, the Requests served that relate to various unrelated activities within

12

the state have no relevance to specific jurisdiction in North Carolina. *See Wallace v. Yamaha Motors Corp., U.S.A.*, 2022 U.S. App. LEXIS 447, at **8-9 (4th Cir. Jan. 6, 2022) (relying on *Ford* and finding no specific jurisdiction in a product liability case because "[p]laintiff has not shown any connection between [defendant's motorcycle] business in South Carolina and the accident that gives rise to her claims" because the motorcycle was designed, distributed, and sold elsewhere); *Megan Lee Studio, LLC v. Tieguys.com, Inc.*, 2023 U.S. Dist. LEXIS 153580, at **18-19 (W.D.N.C. Aug. 29, 2023) (citing *Ford*; no specific jurisdiction because "[t]he fact that [they] may have sold and shipped other products to the forum State is unrelated to the present action").[3]

The U.S. Defendants' business activities in North Carolina, none of which relate to the Video, do not establish specific jurisdiction. Finding otherwise would effectively subject every national and international corporation to personal jurisdiction in every state where they conduct business, even if such business has no connection to the lawsuit. Moreover, requiring each Defendant, including specifically the U.S. Defendants, to provide information regarding every contact they or any of their subsidiaries or affiliates have had or may have with North Carolina, regardless of whether such contacts relate to Plaintiff's claims, is unduly burdensome, not proportional to the needs of the case, and well beyond the scope of reasonable jurisdictional discovery. *See Freud Am., Inc.*, 2020 U.S. Dist. LEXIS 248655, at **13-14 (denying jurisdictional discovery into contacts unrelated to underlying controversy); *Premier Research Int'l, LLC v. Medpace, Inc.*, 2020 U.S. Dist. LEXIS 179669, at *30-31 (M.D.N.C. Sept. 30, 2020) (denying requests for jurisdictional discovery into contacts that would not reveal facts relevant to specific

---

[3] At the Hearing, Plaintiff relied almost entirely on *Ford* to justify the jurisdiction claims and accused Defendants of taking a position on jurisdiction that was "outrageously almost unethically false based upon *Ford*." (Ex. A at 36:14-15). Defendants' position was wholly justified. Plaintiff's position was unfounded and the *ad hominem* allegations were inappropriate and wrong.

13

jurisdiction); *Farrar v. Cessna Aircraft Co.*, 2019 U.S. Dist. LEXIS 16228 (S.D.W.V. Feb. 1, 2019) (quashing subpoena for deposition testimony regarding defendant's distribution and sales of products in West Virginia because "[t]he Fourth Circuit has recognized that a stream of commerce theory does not support a finding of personal jurisdiction); *Cabell v. Zorro Prods.*, 294 F.R.D. 604, 609 (W.D. Wash. 2013) (granting protective order against jurisdictional discovery requests that went beyond "the relationship between the forum state and plaintiff's claims").[4]

### B. Requests Nos. 3, 4 and 5 Seek Impermissible Merits Discovery

Requests Nos. 3, 4 and 5 each seek an astonishing quantity of information that is unrelated to specific (or general) jurisdiction and is plainly designed to obtain merits discovery in violation of the Order. In headings purporting to summarize each Request, Plaintiff added the label "North Carolina:" "North Carolina – Knowledge and Targeting of Plaintiff"; "North Carolina – Knowledge of Advertisement/Cannes Lions"; and "North Carolina – Relationship, Normal Procedure and Departure from Norm tending to Show Intent, Willful Blindness or Reckless Disregard". (*See, e.g.*, Ex. D at 15, 18, 21). But simply saying "North Carolina" doesn't transform these obvious merits inquiries into legitimate requests for <u>jurisdictional</u> discovery.

Request No. 3 purports to seek information about Defendants' "Knowledge and Targeting of Plaintiff."[5] Plaintiff argues that if Defendants knew she was a North Carolina state senator and/or targeted her specifically, that establishes jurisdiction. (*See, e.g.*, Ex. C at 2.) Plaintiff is wrong. Courts consistently hold that the relevant inquiry is whether content posted online is

---

[4] *Spendlove v. RapidCourt, LLC*, 2019 U.S. Dist. LEXIS 220392 (E.D. Va. Dec. 20, 2019), cited by Plaintiff in the Motion, does not compel a different result in this case, where the Requests at issue are so fundamentally overbroad and Plaintiff has not even tried to articulate a possible basis for establishing specific jurisdiction over any Defendant.

[5] In reality, the information sought by Request No. 3 is far broader, as discussed below.

directed at North Carolina viewers, not whether that content features or discusses a North Carolina resident. *See, e.g., Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (even though allegedly defamatory article discussed a Virginia resident, it was not targeted at Virginia readers because it was "not designed to attract or serve a Virginia audience."); *Accu-Sport Int'l, Inc. v. Swing Dynamics, Inc.*, 367 F. Supp. 2d 923, 924-25, 927 (M.D.N.C. 2005) (misleading statements were not "uttered in North Carolina or directed to potential customers in North Carolina").

Again, Plaintiff fails to explain how "knowledge of or targeting of Plaintiff" is relevant to specific jurisdiction and just insists that it is. (Mot. at 8). Previously, Plaintiff relied on *Calder v. Jones*, 465 U.S. 783 (1984) on this issue. But the Supreme Court in *Calder* did not hold that knowingly or purposefully writing about a California resident was sufficient to establish jurisdiction. Rather, it emphasized that the allegedly defamatory article concerned California events, was based on information from California sources, and was circulated in a newspaper whose largest circulation by far was in California. *Calder*, 465 U.S. at 788-90. Here, Defendants have provided sworn testimony that none of those elements is present. (*See, e.g.*, Calazans Decl. ¶ 19). Thus, discovery concerning so-called "knowledge and targeting" of Plaintiff cannot provide a basis for specific jurisdiction over the Defendants and therefore is not a proper subject of jurisdictional discovery.

Nonetheless, in the spirit of compromise, DM9 and DDB were willing to conduct a reasonable search for documents pertaining to whether Defendants were aware of Plaintiff and/or her TED Talk prior to the Video's submission to the Cannes Festival.[6] They attempted to discuss the parameters for such a search in the June 26 meet-and-confer, but Plaintiff refused to participate.

---

[6] Defendants Whirlpool, Whirlpool do Brasil, and Omnicom were not involved with the Video and therefore possess no responsive documents. (*See, e.g.*, Ex. D at 68-69).

That limited search is all that could possibly pertain to specific jurisdiction, even under Plaintiff's bogus theory. Anything more would involve impermissible merits discovery. Indeed, notwithstanding the titles Plaintiff assigned to the Requests and Plaintiff's attempts to recast them as narrow topics, Requests Nos. 3, 4 and 5 actually seek every bit of information connected in any way to the Video's creation and the Cannes Festival to which it was submitted. Specifically, Request No. 3 seeks details of "all actions" taken by Defendants (and their subsidiaries and affiliates) "associated with" the use of the TED Talk in the Video, "including all action relating to the creation or modification of the [Video]" in any way. Request No. 4 seeks details of "all actions" taken by Defendants (and their subsidiaries and affiliates) "to create, generate, modify, disseminate, enter, or publicize" the Video, as well as "reactions" to the Video and the "reception" at the Cannes Festival. And Request No. 5 seeks details of every type of agreement involved in the Video's creation and dissemination, from non-competes to "Medical, safety, or risk acknowledgment forms." (*See, e.g.*, Ex. D at 123). It also seeks information completely unrelated to agreements: "for each individual or entity appearing in the list attached hereto as Exhibit "A" [which was not attached]… describe their involvement relating in any way to the Ad, and describe their connection to You or any other party to this action if not You." (*See, e.g.*, Ex. D at 124). Notably, Plaintiff chose not to discuss the specifics of these (or other) Requests in the Motion.

That's because none of the information Plaintiff seeks would aid the Court in assessing whether the Video was "expressly aimed" at North Carolina viewers. Rather, these are merits inquiries that the Court prohibited. (Ex. A at 5:13-20). And yet, in a nutshell, that is the information sought by Requests 3, 4 and 5. In a telling omission, Plaintiff doesn't argue in the Motion that these Requests have anything to do with jurisdiction, defaulting instead to the refrain about the "knowledge of or targeting of Plaintiff" addressed above and vague statements about

corporate structure. (Mot. at 8). Plaintiff doesn't even attempt to explain how the rest of the Requests relate to jurisdiction. Nor could Plaintiff. The Court couldn't have been clearer: discovery into the specifics of the Video's creation, who knew what and when, relates to the merits, not jurisdiction. Plaintiff cannot avoid that result by slapping "North Carolina" at the top of the Request. As a result, Requests 3, 4 and 5 should not be permitted and the Motion should be denied.

## IV. Plaintiff's Veil-Piercing Discovery Is Improper

In Request No. 2, Plaintiff asks Defendants to "[d]escribe in detail each of the relationships between" the Defendants and each of their affiliates and subsidiaries, in support of a theory Plaintiff labels "North Carolina – Instrumentality / Alter Ego / Domination & Control." (*See, e.g.*, Ex. E at 11). To justify these demands, Plaintiff claims that jurisdiction can be established over the Brazilian Defendants—who have no U.S. contacts—under veil-piercing theories that would impute jurisdictional contacts of the U.S. Defendants to their Brazilian subsidiaries. In doing so, Plaintiff evidently seeks to discover the "web" of relationships Plaintiff believes would warrant applying an "alter ego" or "single business enterprise" theory of secondary jurisdiction. Under rare circumstances, courts invoke these doctrines if the parent exercises "complete domination over the finances, policies, and business practices" of the subsidiary "to commit [a] fraud or wrong" that has harmed a plaintiff, *Johnson v. Lendlease (US) Pub. P'ships LLC*, 2022 U.S. Dist. LEXIS 117888, at **16-17 (E.D.N.C. July 5, 2022), or if affiliated companies "have unified their operations and resources to achieve a common business purpose and where adherence to the fiction of separate corporate identities would defeat justice," Ex. C at 4 (quoting *Duong v. N. Am. Transp. Servs. LLC*, 2019 U.S. Dist. LEXIS 241092, at **47-48 (D.S.C. Sept. 25, 2019)).

What Plaintiff ignores, however, is that these veil-piercing theories are forms of <u>secondary</u> jurisdiction that are irrelevant unless and until primary jurisdiction has been established. They

apply only once personal jurisdiction—and the required minimum contacts with the forum—have been established as to one of the Defendants. Only then can those contacts be imputed to any other Defendants. *See, e.g.*, *Johnson*, 2022 U.S. Dist. LEXIS 117888, at \*16-17 (assessing secondary alter ego theory of personal jurisdiction for parent entities only after finding that the court had personal jurisdiction over the subsidiaries); *P1 Grp., Inc. v. Ripkurrent, LLC*, 2024 U.S. Dist. LEXIS 1654573, at \*\*12-13 (W.D.N.C. Aug. 13, 2014) (assessing secondary alter ego theory of personal jurisdiction over certain defendants only after concluding that another defendant was subject to specific jurisdiction); *Duong*, 2019 U.S. Dist. LEXIS 241092, at \*\*48-49 (finding single business enterprise theory of personal jurisdiction could not be invoked because there were in-state contacts of another defendant to impute). Here, no primary jurisdiction has been, or can be, shown, and therefore any discovery into secondary jurisdiction theories is oppressive, overbroad, unduly burdensome, and wholly unwarranted.[7]

Moreover, discovery relating to Plaintiff's veil-piercing theories should be denied because Plaintiff has not pled any plausible basis to support piercing the corporate veil. Other than unsupported, conclusory assertions that the U.S. Defendants exercised "control and oversight" over the foreign subsidiaries, the record lacks a shred of evidence—or even plausible allegations—that would support veil-piercing. Thus, expansive discovery into these far-fetched theories is unwarranted. *See, e.g., Wilson & Wilson Holdings LLC v. THC, LLC,* 673 F. Supp. 3d 409, 414-15 (S.D.N.Y. May 15, 2023) (jurisdictional discovery on veil-piercing rejected because "he has

---

[7] *Gourdine v. Karl Storz Endoscopy-Am., Inc.*, 2015 U.S. Dist. LEXIS 175781 (D.S.C. Nov. 6, 2015), cited by Plaintiff, is in accord. There, discovery into a parent/subsidiary relationship was permitted but it was undisputed that there was primary jurisdiction over the subsidiary. Likewise, in *Wallace v. Greystar Real Estate Partners, LLC*, 2019 WL 4305849 (M.D.N.C. Sept. 11, 2019), the defendants' practice was to refer to different entities using the same term, making it hard to determine which subsidiary had done what and justifying discovery on corporate structure. No ambiguity exists here; Defendants have submitted detailed declarations about each entity.

not pled a plausible basis to pierce the corporate veil"). That is especially true here, where the Request is not limited to the Defendants' relationships with one another but also extends to each of their affiliates and subsidiaries, despite those unnamed entities having no connection to the case. *See Beyond Systems, Inc. v. World Avenue USA, LLC*, 2010 U.S. Dist. LEXIS 158-31, at \*\*8-9 (D. Md. June 2, 2010) (denying similarly overbroad requests that would have involved inquiries into "every subsidiary regardless of factual underpinnings of the present case").

## V.       The Requests Are Oppressive, Unduly Burdensome, and Violate the Order

It bears repeating just how far Plaintiff has exceeded the bounds of the Order and the scope of reasonable jurisdictional discovery. A few examples:

The Order limited Plaintiff to five <u>single-part</u> interrogatories and five document requests per Defendant; Plaintiff instead served hundreds of demands, including expansive subparts.

The Order prohibited Plaintiff from seeking discovery from any non-party or potential defendant; Plaintiff crafted the Requests and the associated definitions to expressly include every subsidiary and affiliate of each Defendant, thus extending discovery to those very same non-parties. And now Plaintiff doubles down, moving this Court to compel production and arguing that the documents of all subsidiaries are within Defendants' control and thus discoverable—a brazen attempt to evade the Court's restrictions. (Mot. at 8).

The Order prohibited merits discovery; Plaintiff dressed up the Requests with a "North Carolina" label without explaining how the underlying discovery bears on jurisdiction.

Under the Federal Rules, discovery must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Even if this were standard discovery, not subject to the additional limits of the Order, the Requests would violate that requirement. They are so broad that they essentially encompass every aspect of each Defendant's business over a five-year period—all revenues, all

advertising expenditures, any physical presence, every employee, all travel, ownership interests, officers and directors, and so on—in some cases throughout the U.S. The Requests seek to dig into every minute detail of each Defendant's corporate relationships, affiliates and subsidiaries. Such Requests are not proper. They are unabashedly designed to harass Defendants and to impose a crushing burden, in the hopes that Defendants will abandon their meritorious jurisdiction defense.

## VI. The Court Should Issue a Protective Order and Award Defendants Their Attorneys' Fees

Rule 37(a)(5)(B) authorizes the Court to issue a protective order under Rule 26(c) and requires the Court to award the opposing party its attorneys' fees if a motion to compel is denied, unless the motion was substantially justified. But Plaintiff's Motion was not substantially justified. Plaintiff flagrantly disregarded the Court's Order limiting jurisdictional discovery, serving hundreds of patently overbroad Requests that have nothing to do with personal jurisdiction. Plaintiff then refused to meet and confer in good faith before filing this motion. The Court should deny the Motion, issue a protective order, and award Defendants' their attorney's fees.

### CONCLUSION

Defendants request that the Court enter an order denying Plaintiff's Motion to Compel Discovery Response and forbidding Plaintiff from seeking the discovery set forth in the Requests; awarding Defendants their costs and reasonable attorneys' fees incurred in opposing this motion; and granting such further relief as the Court deems just and proper.

Dated: July 23, 2026        Respectfully submitted,

**DAVIS & GILBERT LLP**

*s/ Guy Cohen*
Guy Cohen (admitted *pro hac vice*)
Jacklyn M. Siegel (admitted *pro hac vice*)
Charlotte McCary (admitted *pro hac vice*)
1675 Broadway
New York, NY 10019
(212) 468-4800
gcohen@dglaw.com
jsiegel@dglaw.com
cmccary@dglaw.com

**ALSTON & BIRD LLP**

*s/ Kyle R. Hair*
Kyle R. Hair
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
(704) 444-1167
Kyle.Hair@alston.com

*Attorneys for Defendants Omnicom Group Inc., Whirlpool Corporation, DDB Worldwide Communications Group LLC, DM9 Comunicacao Ltda, Whirlpool Do Brasil Ltda*

**CROWELL & MORING LLP**

Andrew J. Avsec (admitted *pro hac vice*)
300 N. LaSalle Drive, Suite 2500
Chicago, IL 60654
(312) 840-3260
aavsec@crowell.com

*Attorneys for Defendants Whirlpool Corporation and Whirlpool Do Brasil Ltda*

21

# ARTIFICIAL INTELLIGENCE (AI) CERTIFICATION

I hereby certify the following:

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

Every statement and every citation to an authority contained in this document has been checked by an attorney and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated:  July 23, 2026

*s/ Kyle R. Hair*_____
Kyle R. Hair

22

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing Memorandum of Law in Opposition to Plaintiff's Motion to Compel Discovery Responses was filed electronically. Notice of this filing will be sent by email to counsel for Plaintiff by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/ Kyle R. Hair*
Kyle R. Hair

23